[No. 962.   Decided April 21, 1894.]

H. A. STRONG AND E. C. WARNER, *Appellants*, v. E. EL-
    DRIDGE AND ERASTUS BARTLETT, *Respondents*.

DEATH OF DEFENDANT PENDING ACTION — PRESENTMENT OF CLAIM
    TO ADMINISTRATOR — SUBSTITUTION OF ADMINISTRATOR — CON-
    TRACT — SUBSCRIPTION — PARTIES.

Where a judgment has been rendered in a cause prior to the death of a party defendant, the jurisdiction of the appellate court to determine an appeal therefrom is not affected by the failure to present the claim upon which the action is founded to the administrator of such defendant's estate.

An order, made upon the *ex parte* application of plaintiffs, substituting an administrator as a party to the action upon the death of defendant, is not erroneous on the ground that it was made without notice to the administrator.

Although an instrument given in consideration of the location of a foundry at a certain place may recite that the maker "agrees to subscribe" a certain amount, yet where the facts surrounding the

transaction show that the instrument was delivered and received by the parties thereto as a subscription, the words "I agree to subscribe" must be construed to mean "I agree to pay." (HOYT, J., dissents.)

When a contract arises by reason of an offer or proposal by one party which is accepted and acted upon by the other, the person to whom the offer or promise is actually made may be shown by extrinsic evidence, although not named in the instrument evidencing the contract.

*Appeal from Superior Court, Whatcom County.*

*Kerr & McCord,* for appellants.

*Dorr, Hadley & Hadley,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—This action was instituted to enforce the payment of an alleged subscription made for the purpose of securing the location of a certain foundry and machine shops at the city of Fairhaven, in this state.

The plaintiffs allege in their complaint that on or about the 16th day of September, 1890, they were the owners of and operating a foundry and machine shops in the city of Port Townsend; that for the purpose of inducing them to remove their foundry and shops to Fairhaven, the sum of five thousand dollars was offered to them by the citizens and property owners of Fairhaven and vicinity, to be paid upon the location of said foundry and machine shops in Fairhaven, when the same should be put into successful operation, equipped and furnished with all the requisite tools, implements, machinery, etc.; that plaintiffs agreed with said citizens and property holders that they would locate their foundry and shops upon such condition, and thus accepted the offer and proposition of the said property holders; that the agreement to locate said foundry and machine shops at Fairhaven upon the terms and conditions above mentioned, and not otherwise, was made known to defendants on or about September 16, 1890, at the city of

Sehome, and that on said date the defendants were the owners of large quantities of real estate in the city of Fairhaven and vicinity, and believing, in common with other subscribers and property holders, that the location of said foundry and shops would materially enhance the value of their property, and being largely interested in the location of said foundry and machine shops, and with such knowledge, and with the desire to enhance the value of their property, they executed and delivered to the plaintiffs a certain agreement, of which the following is a copy:

"SEHOME, WASHINGTON, .............., 189......
"I agree to subscribe $1,500 towards getting the foundry at Fairhaven.
"E. ELDRIDGE, for ELDRIDGE & BARTLETT."

That this agreement was executed by Eldridge for himself and Bartlett, whose agent he was, and was intended by the defendants to be received, and the same was received by the plaintiffs, and was, in fact, their actual completed subscription of the sum of $1,500 to plaintiffs' enterprise, and made to appellants for the purpose of inducing them to erect their foundry and shops at Fairhaven; and the said defendants then and there delivered the said agreement or paper writing to plaintiffs, as their completed subscription to plaintiffs' enterprise, and for their use and benefit; that said agreement was, after its delivery, put down among other subscriptions delivered to plaintiffs for the same purpose, and that upon the faith of said subscriptions and agreements, this one among them, the said foundry and shops were to be located and erected at Fairhaven and not elsewhere; that subsequently and before this suit was instituted, and before a demand was made for the payment of said subscriptions, the plaintiffs, the requisite amount having been subscribed, removed said foundry and shops, and put them into successful operation, and fully carried out and performed all of their promises to

said divers persons subscribing, and to said defendants, and have ever since continued to operate and are now operating the same, as they represented to the defendants they would do when this subscription was made; and that it was solely upon the faith of said subscriptions, and this one of the defendants in particular, that the said foundry and machine shops were located at Fairhaven and not elsewhere. The plaintiffs further allege that, in removing the said shops from Port Townsend and locating the same at Fairhaven, and in procuring machinery and necessary equipments, they incurred debts, liabilities and obligations upon the faith of such subscriptions and this one in particular, which they would not have incurred had they not relied upon said subscription; that they completed said shops without any notice, knowledge or any reason to believe that the defendants intended to revoke said subscription, and that they have demanded the payments of said sum from said defendants since the completion of said work and before the commencement of this action, but that the defendants have not paid the same, nor any part thereof.

To this complaint the defendants interposed a demurrer upon the ground that it failed to state facts sufficient to constitute a cause of action; which demurrer was sustained by the court, and plaintiffs appealed.

It is disclosed by the record in this case that subsequently to the rendition of the judgment appealed from one of the defendants, Edward Eldridge, died, and Hugh Eldridge, administrator of said decedent's estate, was, upon an *ex parte* application to the court by plaintiffs, substituted as a party to this action. But it does not appear that the claim upon which this action is founded has ever been presented to said administrator or rejected by him, and for that reason it is insisted, on behalf of the respondents, that this court has no jurisdiction to determine this appeal.

It is provided by § 986, Code Proc., that "no holder of any claim against an estate shall maintain an action thereon, unless the claim shall have been first presented to the executor or administrator." It is contended by the respondents that this section of the statute and §§ 981 and 984 taken together conclusively show that no action can be maintained against the representative of a deceased person until the claim has first been presented to the executor or administrator and by him rejected, and that is true, because it is explicitly so stated. But in our opinion these sections only refer to cases where an executor or administrator is in existence at the time the action is commenced, for otherwise it would be impossible to first present a claim *against the estate* in the manner therein specified. There is another section of the code, however (988), which provides a method of procedure in cases where a defendant in an action dies during its pendency. It reads as follows:

"If any action be pending against the testator or intestate at the time of his death, the plaintiff shall, in like manner, present his claim to the executor or administrator for allowance or rejection, authenticated as in other cases; and no recovery shall be had in the action, unless proof be made of the presentment."

But even this section is not applicable to the case at bar, for the reason that this action was not pending in the court where it was tried at the time of the substitution of the administrator. It had already been tried and determined. An action is pending from the time of its inception until the entry of final judgment. Black's Law Dictionary.

Counsel for the appellants suggest another reason why it was useless and unnecessary to present the claim sued upon to the administrator after his appointment and substitution as a party to the action, namely, that the court had already determined that appellants had no legal claim against

the decedent, and that therefore there was nothing to present.

It is also objected that the order of substitution was made upon the *ex parte* motion of the appellants, without notice to the administrator, and was therefore wrongful; but we think the objection is not tenable.    The appellants seem to have complied with the provisions of the statute (Code Proc., § 147) in that regard, and to have conformed to the usual practice in this state, as well as elsewhere. *Stoetzell v. Fullerton*, 44 Ill. 108; *Moore v. Rand*, 1 Wis. 245; *Johnson v. Superior Court*, 60 Cal. 578.

The next question for us to determine is, did the signing and delivery of the writing in question constitute a valid and binding obligation on the part of the respondents to pay to the appellants the sum therein mentioned?

It is contended on behalf of the respondents that this instrument is not in any sense a subscription, but merely an agreement to subscribe at some future time, upon some condition or under circumstances satisfactory to the respondents, and also that it cannot be enlarged or its terms varied or changed by averments of the appellants or by oral testimony.    It is evident, we think, from the paper itself, that the respondents desired the location of a particular foundry at Fairhaven, and to accomplish that object they were willing to subscribe $1,500.    Did they actually do so?    If they did, they are bound; otherwise not.    To subscribe, in the sense here contemplated, is to agree in writing to furnish a sum of money, or its equivalent, for a designated purpose.  Anderson's Law Dictionary.    If, therefore, the respondents did not agree to give this specified sum of money to the appellants for the purpose designated, then, according to the above definition, the paper before us is not a subscription and does not constitute the basis of a valid contract, and consequently the demurrer to the complaint was properly sustained.    And

whether they did so agree must be ascertained from a fair and rational interpretation of the words actually used, when viewed in the light of surrounding facts and circumstances.

While the words of a written instrument are usually to be understood in their ordinary, popular sense, unless their meaning is defined by law, or has become peculiar by reason of usage as applied to some particular subject, yet in construing an instrument, if, from the subject or from the connection or object in view, it is apparent that the parties did not so employ them, or, according to their true definitions, they will receive the meaning thus shown to have been intended. The rule is to so interpret the words as to carry into effect the intent of the parties as derivable from the whole instrument and surroundings, whether they have employed language accurately or not. Bishop, Contracts, § 404. See, also, *Atwood v. Cobb*, 16 Pick. 227 (26 Am. Dec. 658).

Moreover, "the true principle of sound ethics is to give the language of the promisor the sense in which he had reason to suppose it was understood by the promisee." Benjamin, Principles of Contracts, 111, citing: *Hoffman v. Ætna Ins. Co.*, 32 N. Y. 405; *Carpenter v. Wells*, 65 Ill. 451, and other cases.

Under the present status of this case it is admitted that the instrument under consideration was delivered and received as a subscription and not merely a promise to subscribe, and that the appellants especially so considered it and incurred liabilities upon the faith of it. We are therefore constrained to hold that the words "I agree to subscribe" were intended to mean "I agree to pay."

But it is insisted by the respondents that there is no privity of contract between the appellants and the respondents, there being no payee named in the instrument. Of course it is elementary that there must be two parties to

every contract, a promisor and a promisee. But when a contract arises by reason of an offer or proposal by one party which is accepted and acted upon by the other, the person to whom the offer or promise is actually made may be shown by extrinsic evidence. *Hopkins v. Upshur*, 20 Tex. 89 (70 Am. Dec. 376); *Swain v. Hill*, 30 Mo. App. 436; *Lathrop v. Knapp*, 27 Wis. 222.

If, however, there is no promisee in existence at the time of the proposal, the promise is not enforceable in law. *Phillips Academy v. Davis*, 11 Mass. 118; *Farmington Academy v. Allen*, 14 Mass. 172; *Strasburg Railroad Co. v. Echternacht*, 21 Pa. St. 220 (60 Am. Dec. 49).

The acceptance of the proposal of the respondents by the appellants, and their incurring liabilities upon the faith of it, created a complete contract upon a consideration moving from the promisee to the promisor. *Cottage Street Church v. Kendall*, 121 Mass. 530; *Carr v. National Security Bank*, 107 Mass. 45.

Judgment reversed, and cause remanded with directions to overrule the demurrer.

DUNBAR, C. J., and STILES and SCOTT, JJ., concur.

HOYT, J. (*dissenting*).—I agree with the holding of the majority of the court that the paper writing set out in the complaint is not in itself evidence of a completed contract, but I am unable to find that it is so aided by the allegations of the complaint as to make it a basis of recovery. In my opinion what is said as to its having been delivered and accepted as a completed subscription is but a legal conclusion on the part of the pleader drawn from the fact that it was made and delivered, and that it is no such statement of fact as can in any manner aid the allegations of the paper writing. I am, therefore, of the opinion that the demurrer was rightfully sustained, and that the judgment should be affirmed.