[No. 8953.  *En Banc.*  June 14, 1911.]

## J. G. Crouch *et al., Appellants,* v. Cornelia A. Forbes, *Respondent.*[1]

Frauds, Statute of—Contract for Broker's Commissions.    A broker's contract for the sale of real estate rests in parol, and is void within the statute of frauds, Rem. & Bal. Code, § 5289, requiring an agreement employing an agent to sell real estate for compensation or a commission to be in writing, where it appears that the vendor refused to sign a proposed contract giving the brokers the exclusive right to sell the land and retain all received over $12,000 as commissions, but later wrote that she objected to some parts of the contract, which she said no doubt could be fixed by a satisfactory talk, that they could send down their man and if they sold she wanted $12,000 net, and that they could keep the letter as a contract until they came down; although she afterwards consummated a deal with a purchaser procured by the brokers for $15,000; since the latter does not accept the terms of the contract and they cannot therefore be read together as one; and the statute requires that the amount of the compensation be fixed in the writing (Dunbar, C. J., and Fullerton, J., dissenting).

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered March 24, 1910, upon granting a nonsuit, dismissing an action for a broker's commission.    Affirmed.

*E. N. Steele* and *Troy & Sturdevant,* for appellants.

*G. C. Israel* and *Frank C. Owings,* for respondent.

Morris, J.—Appellants sought in this action to recover $3,000, as commission upon a sale of real estate in which

[1]Reported in 116 Pac. 14.

they claim to have acted as brokers, and appeal from an adverse judgment.

The record shows that, on September 3, 1909, they went to the home of respondent, and after some preliminary conversation, drew up the following:

"Olympia, September 3, 1909.

"This is to certify that I, Cornelia A. Forbes of Mason county, Wash., the owner of the following described property, to wit: (describing the property) and that for the consideration of $1, receipt of which is hereby acknowledged, I give J. G. Crouch, of Olympia, Washington, the exclusive right to sell or purchase said property on or before April 1st, 1910. Price $12,000 net. Terms: Half cash, balance in one to five years at 7 per cent per annum, or all cash at the option of the purchaser. If the above described property is bought or sold by said J. G. Crouch & John C. Ellis, he is to have no per cent commission and all realized over and above the sum of $12,000. And I agree and bind my heirs to execute and deliver good and sufficient conveyance of said property to the purchaser, according to the terms of such sale, and to furnish abstract showing perfect title."

This writing was satisfactory to respondent, according to the testimony of appellants, but she refused to sign it for the reason that she had previously listed the property with another real estate agent, whose time would not expire until September 8, at which time, if not then sold, she promised to sign it and return it to appellants. On September 8 respondent wrote the following letter to appellants:

"Mr. J. G. Crouch,                    Kamilchie, Sept. 8, 1909.
   "Olympia, Wash.

   "Dear Sir:—The Elma real estate man's time has expired now, and if you have your man in view, bring him down. There are some parts in the contract you left which I do not like after carefully looking it over. But that can be satisfactory after a talk with you, no doubt. If you sell the farm I want $12,000, twelve thousand (net). You may keep this letter as a contract until you come down.

                                    "Cornelia A. Forbes."

Appellants testify that, on receipt of this letter, they procured a purchaser for the farm, who subsequently purchased the same, paying $15,000. The question to be determined is, does the contract, in so far as it constitutes an agreement to pay a commission, fall within the statute of frauds. We are of the opinion that it does. Section 5289, Rem. & Bal. Code, provides that any contract or promise shall be void unless a memorandum thereof be made in writing and signed by the party to be charged, in the following cases: "(5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission." Assuming that respondent fully agreed to all that is set forth in the writing of September 3, she did not sign the writing evidencing the agreement, and it must rest in parol. The letter of September 8 is of itself insufficient to take the case out of the statute, as it does not contain a sufficient memorandum to indicate what the contract was; and if we take the first agreement to supply what is lacking in the letter, we have a contract partly written and partly oral, which is a parol contract. The statute requiring the contract to be in writing, in so far as it relates to the promise to pay a commission, and no such promise being found in the writing, we must look to the oral agreement to supply it, and that we may not do.

Counsel for appellants contend that the two writings should be read together as one, and thus reading them they constitute a contract in writing. That this is a proper rule ofttimes applied by the courts to take a case from out the statute of frauds is undoubted, but such rule is applied to situations where in the letter or other writing the oral agreement is acknowledged and either accepted or rejected, and the party submits to its terms or, confessing them, seeks to avoid them. The letter of September 8, however, neither accepts nor rejects the writing of September 3. Respondent does not submit herself to its terms, nor does she reject them. She says, by implication, that she is now ready to con-

tract. She does not like some parts of the contract sub-
mitted, but expresses her belief that a satisfactory agree-
ment can be reached. The letter is silent as to what part of
the agreement she accepts, or what part she rejects. The
two taken together cannot, therefore, constitute a contract
containing the terms agreed upon. If she had said in her
letter: "I accept the contract as left by you," or: "I refuse
to be bound by the terms agreed upon," the terms of the con-
tract being undisputed, there would only remain the question
whether the signing of the letter referring to it would be
sufficient to avoid the statute, as in the cases relied upon by
appellants. But there is no reference to any contract entered
into. Respondent only expresses her willingness to enter into
a contract, now that she is free to do so by reason of the
expiration of the time given another agent. She refuses the
proffered contract as unsatisfactory, and expresses her
willingness to make a satisfactory arrangement, and fixes
her price at $12,000 net.

Referring to the testimony of appellants, we find respond-
ent, on September 3, refusing to make any contract for the
sale of her farm until September 8, when it could be de-
termined whether or not the Elma agent had effected a sale.
So that, in any event, we cannot find an agreement even in
parol to sell upon the terms offered in the writing of Sep-
tember 3. Neither is the clause in the letter of September 8:
"If you sell the farm, I want $12,000 net," a promise to pay
appellants all received over that sum as a commission.
"$12,000 net" might mean the purchaser was to pay all
costs and charges attending the sale, such as the cost of a
proper conveyance or of mortgage securing any unpaid por-
tion of the purchase price, or the cost of abstract, or the as-
sumption of any liens or incumbrance then on the property.
Finding, then, no promise in writing to pay any commission,
we must sustain the judgment.

These views are in harmony with those expressed in *Keith
v. Smith*, 46 Wash. 131, 89 Pac. 473, wherein it is said,

quoting from *Zimmerman v. Zehendner*, 164 Ind. 466, 73 N. E. 920:

"The statute requires that the contract for the payment of a commission for the sale of real estate be in writing, and a written memorandum or acknowledgment of an oral contract will not fulfill the requirements of the law. . . . The important feature—the amount of commission to be paid— is to be ascertained by parol testimony . . . the exact thing which the statute was designed to prevent."

*Forland v. Boyum*, 53 Wash. 421, 102 Pac. 34, asserts the same rule.

For these reasons, the judgment is affirmed.

CHADWICK, ELLIS, GOSE, MOUNT, PARKER, and CROW, JJ., concur.

FULLERTON, J. (dissenting)—The appellants are real estate brokers. The respondent owned a farm situated in Mason county, and sometime prior to September 3, 1909, requested the appellants to visit her at the farm for consultation, with the view of entering into a contract for a sale of the farm on commission. On the date named, the appellants visited her as requested, when a proposed contract in the following form was drawn up and submitted to her:

"Olympia, September 3, 1909.

"This is to certify that I, Cornelia A. Forbes of Mason county, Wash., the owner of the following described property, to wit: (Description.) And that for the consideration of $1, receipt of which is hereby acknowledged, I give J. G. Crouch, of Olympia, Washington, the exclusive right to sell or purchase said property on or before April 1st, 1910. Price $12,000 net. Terms: Half cash, balance in one to five years at 7 per cent per annum or all cash at the option of the purchaser.

"If the above described property is bought or sold by said J. G. Crouch & John C. Ellis, he is to have no per cent commission, and all realized over and above the sum of $12,000. And I agree and bind my heirs to execute and deliver good and sufficient conveyance of said property to the purchaser,

according to the terms of such sale, and to furnish abstract showing perfect title."

After the contract had been prepared it was remembered that the farm had been theretofore listed for sale with a real estate broker residing at Elma, for a definite period of time which had not then expired, and by agreement of the parties the contract was left with the respondent with the understanding that she would execute it and forward it to the appellants as soon as she was at liberty to do so. The appellants then returned to their place of business, and a few days later received through the mails an inclosure containing the contract unsigned, accompanied by the following letter:

"Mr. J. G. Crouch,                 Kamilchie, Sept. 8, 1909.
    "Olympia, Wash.
        "Dear Sir: The Elma real estate man's time has expired now and if you have your man in view bring him down. There are some parts in the contract you left which I do not like after carefully looking it over. But that can be satisfactory after a talk with you, no doubt. If you sell the farm I want $12,000, twelve thousand (net). You may keep this letter as a contract until you come down.
                                "Cornelia A. Forbes."

The appellants thereupon took up the matter of the sale of the farm with certain of their clients, quoting the price of the farm at $15,000. They succeeded in interesting one Ernst Reitdorf therein, who subsequently purchased the farm directly from the respondent at the price quoted. The respondent refused to recognize the appellants' claim to a commission on the sale, and the present action was brought to recover as a commission all that the respondent received over and above the sum of $12,000. On the trial, which was had before the court sitting without a jury, the appellants put in evidence the foregoing facts, and evidence tending to show the further facts that they were the procuring cause of the sale, and it was to their customer that the farm was sold and conveyed. At the conclusion of their case, the trial judge ruled that the contract upon which the appellants

sued came within the statute of frauds, and entered a judgment dismissing the action.

The evidence, as I view the record, was sufficient to warrant a recovery on the part of the appellants. The statute thought to work an estoppel is found in Rem. & Bal. Code, § 5289, the part material to the question presented reading as follows:

"Sec. 5289. In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say; . . .

"(5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

It is urged that the formal contract, prepared at the first meeting of the parties, is not obligatory, because it is not signed by the respondent, she being the party to be charged therewith; and that the letter does not constitute a contract because it is incomplete, since it does not describe the land intended to be sold, does not set out the terms on which the property is to be sold, and does not set forth the amount of the commission the appellants were to receive for their services. These elements, it is argued, are essential to a valid contract, and unless they are set forth in the writing, the writing falls within the statute. But while I might agree with the contention that the formal writing submitted to the appellants cannot be taken as a contract since it was not signed by the respondent, and since she in her reference thereto says she is not satisfied with certain of its terms, it seems to me that it sufficiently aids the letter to make the letter a valid contract. It is manifest that by the term "farm," used in the letter, the writer refers to the property described in the formal contract. It is manifest also that the price of the farm is fixed; namely, at such sum as will net the owner $12,000. The only matter that remains un-

disclosed, in order to make the contract comply with the requirements contended for, is that it fails to state the amount of the commission to be paid the brokers for their services. But it will be observed that the statute does not directly require this to be done. Nor was the amount of the broker's charge the mischief the statute sought to remedy; the mischief under the old practice was the constant disputes arising between brokers and owners over the question whether the broker was employed to sell at all, and it was to remedy this that the lawmakers required the contract of employment to be in writing. Turning to the statute, it will be observed that this is all that the statute requires in terms to be put into the writing. It requires only that an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or commission, shall be in writing, signed, etc. It does not require that the rate of compensation or the amount of the commission be stated. And this being so, it cannot be essential to the validity of such a contract that these matters be stated therein. On the contrary, the contract of employment of itself implies an agreement to pay such sum as the services shall be reasonably worth, or, in this class of cases, such sum as brokers usually charge for like and similar services. I think, therefore, that the writings are sufficient to comply with the essentials of the statute, and since the amount of the commission due the appellants is not stated in the contract, they should be allowed to recover such sum as brokers usually charge for like and similar services; that is, of course, if the remainder nets the owner $12,000.

It is further argued, however, that the question here suggested is no longer an open one in this state, that this court has put a contrary construction upon the statute, holding that the amount of the commission agreed to be paid must be set forth in the writing. The cases relied upon are *Peirce v. Wheeler*, 44 Wash. 326, 87 Pac. 361; *Keith v. Smith*, 46 Wash. 131, 89 Pac. 473; *Briggs v. Bounds*, 48 Wash.

579, 94 Pac. 101; *Ross v. Kaufman*, 48 Wash. 678, 94 Pac. 641, and *Foote v. Robbins*, 50 Wash. 277, 97 Pac. 103. There is much in these cases, particularly the case of *Keith v. Smith* and *Foote v. Robbins*, that lends color to this contention, but an examination of the cases will show that the precise question now presented was not before us in either of them; that while they were correctly decided on the principles involved, it was not necessary to reach the decisions that it be held that a written contract employing a broker to sell real estate on commission is void where the rate or amount of the commission is not expressed in the contract. I am compelled therefore to dissent from the conclusion reached by the majority.

DUNBAR, C. J. (dissenting)—I concur in what is said above by Judge Fullerton. It is manifest, from the whole written correspondence and from the testimony, that the parties understood each other thoroughly. The statute was enacted for a beneficent purpose, viz., to protect landowners against dishonest real estate brokers. But, unfortunately, there are also dishonest real estate owners who are quick to take advantage of real estate brokers, and the strict construction placed upon the statute by the majority in this case has enabled the landowner, the respondent in this case, to obtain the services of the appellants at her request, without compensation; and after obtaining the price which she desired for her land, by reason of the fact that she availed herself of their services, she pockets the proceeds, and coolly informs them that she will not pay them for their services because the contract was not in writing. The two written exhibits, the one signed, and the other unsigned, but plainly referred to in the written statement which is signed, convince me that an injustice has been done in this case, which was never contemplated by the law.