[No. 10933.    Department Two.    October 9, 1913.]

CHARLES E. CUSHING *et al.*, *Respondents*, v. MONARCH TIMBER COMPANY, *Appellant.*[1]

FRAUDS, STATUTE OF—PLEADING—WHEN RAISED BY DEMURRER.   In an action for a broker's commission, in which plaintiff filed a bill of particulars setting out a written contract within the statute of frauds, a demurrer to the complaint for want of sufficient facts raises the defense of the statute of frauds.

SAME—DEFENSE OF STATUTE—WAIVER.   In an action to recover a broker's commission, the defense of the statute of frauds is not waived, where the defendant demurred upon the ground of want of sufficient facts, and later answered setting out a contract within the statute as the only writing and the entire and sole agreement between the parties, and moved for a nonsuit and later for a directed verdict on the express ground that the contract did not comply with the statute of frauds and was void.

SAME — BROKER'S COMMISSIONS — SUFFICIENCY OF MEMORANDUM—DESCRIPTION OF PROPERTY.   A written contract to pay a broker's commission on the sale of timber lands and timber is within the statute of frauds, Rem. & Bal. Code, § 5289, and void, where it did not contain any description of the lands or timber to be sold, merely referring to it as "our timber."

[1]Reported in 135 Pac. 660.

SAME—PERFORMANCE—EFFECT. ·Performance does not take a contract out of the operation of the statute of frauds.

SAME—ACTIONS—QUANTUM MERUIT. A recovery upon *quantum meruit* cannot be had in an action to recover a broker's commission which was within the statute of frauds.

Appeal from a judgment of the superior court for King county, Main, J., entered August 9, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract. Reversed.

*Edwin H. Flick* (*C. E. Hughes*, of counsel), for appellant.

*Thomas F. Trumbull* and *Harry Ballinger*, for respondents.

ELLIS, J.—The plaintiffs brought this action to collect a broker's commission on the sale of certain timber, timber lands, a logging railroad and equipment which was owned by the defendant, Monarch Timber Company. The complaint alleged:

"That on and prior to December, 1910, the Monarch Timber Company was the owner of eight thousand five hundred (8500) acres more or less of timber land and also five thousand two hundred (5200) acres more or less of timber held and owned under contracts with the owners of the land to remove the same within stipulated times, all of said timber land and timber being situated in Pierce county, state of Washington, and at the same time it owned or controlled thirteen and one half (13½) miles of logging railroad with locomotives, donkey engine and the usual equipment of a logging camp, the same being all of the property owned or controlled by the said Monarch Timber Company, and constituting all its assets."

It is also alleged:

"That on or about the 9th day of December, 1910, the defendant, Monarch Timber Company, entered into an agreement in writing with these plaintiffs, whereby, in consideration of the sale of said property being consummated and the purchase price paid, it agreed to pay a commission of five per cent on the purchase price to these plaintiffs for finding and bringing to it the customer."

There was a further allegation that the plaintiffs produced a purchaser, one J. O. Story, to whom a sale of the property described was made on May 1st, 1911, for the sum of $550,000. The defendants moved that the plaintiffs furnish a bill of particulars, setting out in full the written agreement referred to in the complaint. The motion being granted, the plaintiffs furnished the following, which it is admitted was the only writing evidencing any agreement between the parties:

"Seattle, Wash. Dec. 9, 1910.
"Mr. Charles E. Cushing,
     "Seattle, Wash.
"Dear Sir:—Referring to the present negotiations in regard to selling our timber, will say about commissions; that in consideration of the sale being consummated and the purchase price being fully paid, we agree to pay a five (5%) per cent commission to yourself and Charles McGuire for bringing us your customer, with the understanding that the above commission is to be in full of all commissions whatsoever going from the seller to any person, and upon payment of said commission the undersigned shall be entitled to a receipt and acquittance from all persons instrumental in making said sale, either as broker or agent or otherwise.

"The above five (5%) per cent commission to be paid in cash if we are paid not less than Three Hundred Thousand ($300,000) Dollars on the first or cash payment, and the balance, if any, as soon thereafter as may be fairly and equitably arranged between us.

"Should the cash payment made be less than Three Hundred Thousand ($300,000) Dollars, we will set aside enough of the deferred payments coming to us to pay you any balance of commission.          Yours truly,
               "Monarch Timber Co.
                    Per. R. H. Roys, Treas."

The defendants then demurred to the complaint on all of the statutory grounds. The demurrer was overruled and the defendants answered, admitting the ownership of the timber, timber lands and logging railroad, denying the making of the contract as set out in the complaint, and as a first affirmative

defense, set out and admitted the above letter, and alleged that no other or different agreement or writing touching the sale of any of the timber interests of the Monarch Timber Company was ever entered into between the parties. For a second affirmative defense, the answer alleged that nothing whatever had been done under the agreement contained in the letter of December 9th, by the plaintiffs, in the way of producing a purchaser up to January 18th, 1911, on which date the defendant, Monarch Timber Company, revoked whatever authority to make a sale it had conferred by that letter. The answer further denied that the plaintiffs ever produced any purchaser. The plaintiffs' reply admitted the agreement as set out in the letter of December 9th, and admitted receiving from the Monarch Timber Company the letter of revocation, but denied that it was delivered prior to the producing of a purchaser by the plaintiffs, and affirmatively alleged that the plaintiffs, prior to the letter of revocation, had introduced a prospective purchaser of the timber holdings and plant of the defendant, Monarch Timber Company, in the person of J. O. Story, with whom negotiation was continued until a sale was consummated.

At the beginning of the trial, the defendants moved for judgment on the pleadings, on the ground that the action could not be maintained upon the admitted contract and that it had been revoked prior to the production of a purchaser as shown by the pleadings. This motion was overruled, and when plaintiffs had rested, the defendants moved for a nonsuit as to all of the defendants save the Monarch Timber Company. That defendant moved, at the close of the evidence, that the case be taken from the jury, on the ground that the contract proven was within the statute of frauds and in any event had been revoked, and moved for a directed verdict, which motions were overruled. The trial resulted in a verdict for $27,500 in favor of the plaintiffs. From a judgment upon the verdict, the defendant, Monarch Timber Company, prosecutes this appeal.

The sale of the timber, timber lands, railroad and equipment, as it appears by the evidence, was actually consummated through the direct intervention of a third person, one Miller, who, it is admitted, has been paid a commission of $18,500 by the appellant, but there was evidence strongly tending to show that the purchaser, Story, was first interested in the matter through the efforts of the respondents, and that Miller was, as the respondents understood throughout all the negotiations, working in conjunction with them to bring about the sale. We will not attempt to review the voluminous evidence introduced on both sides, further than to say that, though extremely close and in part, as it seems to us, unconvincing, it presents such a conflict on all material points as would make the verdict of the jury unassailable but for the claim that the contract sued upon was within the ban of the statute of frauds, which the appellant asserts was pleaded as a defense and urged by it at every stage of the proceedings. This defense is now urged as the principal ground for a reversal.

The respondents insist that the statute of frauds cannot be urged here because it was not affirmatively pleaded as a defense, and that the appellant moreover waived this defense by setting out and admitting the writing in its answer. We think, however, that, by a fair and reasonable construction of the complaint and answer, the intention of the appellant to invoke and rely upon the statute of frauds as a defense sufficiently appears. The complaint, purporting to plead the substance of the written agreement, outlined a contract which would have been invulnerable to the ban of the statute. Treating the bill of particulars as a part of the complaint, the appellant demurred thereto. While the reasons of the court for overruling the demurrer are not stated in the record, it is obvious that the demurrer itself was sufficient to raise the statute. The answer, after denying the contract as alleged in the complaint, by way of an affirmative defense,

set out and admitted the writing, but followed that admission with the direct allegation that there was no other or different writing between the parties, and that the writing so set out comprised the entire and only writing existing between the parties relative to the sale or prospective sale of the timber interests of the Monarch Timber Company.

With this history of the formation of the issues before us, it seems plain that the only purpose of the appellant in setting out the writing, and the subsequent allegation that it was the only writing evidencing any agreement between the parties, was to plead facts showing the insufficiency of the writing in law. The trial court manifestly so construed it. When the case was called for trial, counsel for the appellant moved to be allowed to amend the answer by adding to the above mentioned allegations the words "and that said agreement does not comply with the statute of frauds of this state." The court, in denying the motion, said: "I do not think it makes any difference whether it is there or not;" and the trial proceeded apparently upon that theory. The appellant's motion for a nonsuit was upon the ground, among others, that the contract was within the statute of frauds and void. As to the Monarch Timber Company, the motion was denied, the court announcing at the time that he was not entirely satisfied with the sufficiency of the writing and would reserve the final ruling thereon until the evidence was all in. The appellant's motion when the testimony was closed, that the case be taken from the jury, was upon the distinct ground that the only contract proved was within the statute of frauds. With a complaint only divulging the vulnerability of the contract sued upon, by the aid of a coerced bill of particulars, with a demurrer, obviously sufficient to invoke the statute, interposed, with an answer denying the contract set up in the complaint and pleading every fact necessary to the invocation of the statute, with a refusal to permit an amendment adding the legal conclusion that the contract as pleaded was within the statute, with the statute brought to the fore at every ap-

propriate stage of the trial, it would seem a wanton sacrifice of substance and intention to a technical sufficiency of form to hold that the ban of the statute may not be invoked on this appeal on the ground of a waiver by insufficient pleading in the court below.   On such a record this court has never so held.

In *Moses Land Scrip and Realty Co. v. Stack-Gibbs Lumber Co.*, 56 Wash. 529, 106 Pac. 207, chiefly relied upon by the respondents, broad language was used, but when read in context it cannot be held to govern a situation such as presented here.   Speaking of the answer, it is there said: "It did not plead any defense based upon the statute of frauds, nor does the record affirmatively show that any such defense was urged upon the trial court."   The case here falls within the exception recognized in the recent case of *Goodrich v. Rogers*, *ante* p. 212, 134 Pac. 947, where we said: "On the other hand, if a contract is plead that is without the statute, that is, that it is in writing, the pleading is not vulnerable to a demurrer, neither is the defendant bound to plead the statute in his answer."   See, also, *Taylor v. Howard*, 70 Wash. 217, 126 Pac. 423.

We have recently held, following the rule of the common law, that growing timber pertains to the realty, and that an agreement to pay a commission on a sale of growing timber falls within the purview of the statute.   *Engleson v. Port Crescent Shingle Co.*, 74 Wash. 424, 133 Pac. 1030.   The statute, Rem. & Bal. Code, § 5289 (P. C. 203 § 3), reads:

"In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say . . . (5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

By an unbroken line of decisions we have held that, to meet this statute, the writing evidencing the agreement must be so complete in itself as to make a resort to parol evidence to

establish any material element of the agreement unnecessary. The rule deduced from prior decisions and tersely expressed in *Engleson v. Port Crescent Shingle Co., supra,* is that:

"A writing sufficient to satisfy the statute must be coextensive with the stipulations of the parties; that is to say, it must express the entire contract and leave nothing that pertains to the essentials of the contract to be supplied by parol."

The following decisions amply sustain that statement in all of its breadth. We cannot look beyond the writing itself to fix the liability. *Swartswood v. Naslin,* 57 Wash. 287, 106 Pac. 770; *Keith v. Smith,* 46 Wash. 131, 89 Pac. 473; *Foote v. Robbins,* 50 Wash. 277, 97 Pac. 103; *Forland v. Boyum,* 53 Wash. 421, 102 Pac. 34; *McCrea v. Ogden,* 54 Wash. 521, 103 Pac. 788; *Crouch v. Forbes,* 63 Wash. 564, 116 Pac. 14.

That the subject-matter of the sale upon which the commission is claimed is an essential part of the contract seems too plain for argument. Proof of a sale of, or of the production of a purchaser ready, able and willing to buy, the specific property contemplated by the agreement is, of course, essential to any recovery of the agreed commission. To avoid the uncertainty against which the statute is directed, it is obviously as necessary that the subject-matter of the sale be sufficiently described as that the amount of the commission be sufficiently stated. As indicated in *Swartswood v. Naslin, supra, Keith v. Smith, supra,* and *Goodrich v. Rogers, supra,* the parties, the employment, the description of the real estate and the agreement to pay the commission are all essentials to any writing meeting the terms of the statute. The case of *Peirce v. Wheeler,* 44 Wash. 326, 87 Pac. 361, has no bearing upon the question here presented. We there merely held that the statute here involved has no application to the authority of the agent to sell the property "so far as the rights of a vendor or purchaser who deals with the agent of another are concerned," a thing obviously foreign to the right of the agent to recover a commission as against his principal.

From whatever angle we view the writing which was set out in the respondents' bill of particulars as the only contract sued upon, it does not meet the requirements of the statute. The only reference to any subject-matter of sale is found in the opening clause, which reads: "Referring to the present negotiations in regard to selling our timber." The description being essential, it follows that it must be such a description as would meet the requirements of a sufficient description under any other phase of the statute of frauds, as, for instance, when invoked in actions for specific performance. It must be a description, complete within itself, by which the realty to be sold can be known and identified. *Grafton v. Cummings*, 99 U. S. 100; *Allen v. Kitchen*, 16 Idaho 133, 100 Pac. 1052; *Craig v. Zelian*, 137 Cal. 105, 69 Pac. 853; *Ridgway v. Ingram*, 50 Ind. 145, 19 Am. Rep. 706; Browne, Statute of Frauds (5th ed.), § 385; 17 Cyc. 748. Parol evidence may be resorted to for the purpose of applying the description contained in a writing to a definite piece of. property and to ascertain its location on the ground, but never for the purpose of supplying deficiencies in a description otherwise so incomplete as not to definitely describe any land. The description must be in itself capable of application to something definite before parol testimony can be admitted to identify any property as the thing described.

"Parol evidence may be resorted to for the purpose of identifying the description contained in the writing with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the parties negotiated and supplying a description thereof which they have omitted from the writing." *Craig v. Zelian, supra.*

The description here involved is too indefinite to describe anything in itself. The words "our timber," which comprise the whole description, designate no locality, no quantity— nothing but ownership, and we find nothing further in the writing by way of explanation than a reference to "present negotiations." Whether all of the appellant's timber was meant or some specific part included in the negotiations can

only be determined by parol testimony. The effort to apply this description to the things actually sold and for the sale of which the commission was claimed demonstrates its own futility. The things actually sold were timber, timber lands, a railroad and its equipment. This is not merely identifying the thing described in the contract as "our timber," but is describing a number of things wholly distinct and different. The description in the writing was wholly insufficient to meet the requirements of the statute.

Nor does the fact that the sale was actually made, even if it be conceded that it was made entirely through the efforts of the respondents, furnish any ground for recovery. Performance does not take the contract out of the statute of frauds.

"From its very nature a claim for commission could not be made until earned, and to hold that performance would take an action of this character out of the operation of the statute would nullify the statute itself." *Keith v. Smith, supra.*

See, also, *Thill v. Johnston,* 60 Wash. 393, 111 Pac. 225.

For the same reason there can be no recovery upon the *quantum meruit* or upon an implied contract to pay for services rendered. Historically considered, all statutes of frauds are intended "for the prevention of frauds and perjuries." *Craig v. Zelian, supra.* To permit a recovery upon the *quantum meruit* or upon an implied contract would be to defeat the purpose of the statute and supply by implication a contract which the statute expressly says may only be proven by written evidence. *McCarthy v. Loupe,* 62 Cal. 299; *Beahler v. Clark,* 32 Ind. App. 222, 68 N. E. 613; *Lee v. York School Township of Elkhart County,* 163 Ind. 339, 71 N. E. 956; *Keith v. Smith, supra.*

The sale, as we have seen, included timber, timber lands, and a railroad. There was no evidence of any segregation of the price paid for the timber from that paid for the other property involved, nor was there any evidence that the parties to this action ever contemplated any such segregation. It is

manifest that if there was any contract or agreement to pay a commission upon any sale, it was upon a sale of all of these properties. It is equally manifest that whatever the agreement, it rested, so far as the thing sold was concerned, wholly in parol. It is elementary that a contract part oral and part in writing is obnoxious to the statute.

The judgment is reversed, and the cause is remanded with direction to dismiss.

CROW, C. J., MORRIS, and GOSE, JJ., concur.