[No. 18079. *En Banc.* July 17, 1924.]

## J. C. LEVOLD, *Appellant,* v. HANS PEDERSON, *Respondent.*[1]

LIMITATION OF ACTIONS (17)—ORAL CONTRACTS—PARTLY IN WRITING. An action to recover an agent's commissions of five per cent upon the amount of ship building contracts secured by the agent, pursuant to an oral agreement, confirmed by letters from the principal to the agent stating that the principal is able to comply with certain specified conditions and referring to the agent's statement that the agent "will award me a contract to build eight vessels for the French Syndicate at a price of $305,000 each, less 5% com," is an action on an oral contract, subject to the three-year statute of limitations; since the terms of the agreement for commissions are not contained in the writing and rest in parol.

SAME (17). In such a case, a letter written on the same day to the principal by the party for whom the ships were to be built, stating that "it is agreeable to me that you pay" to the agent five per cent commission for his services, "this also being in conformity with your mutual agreement as per the letter from you" to the agent of the same date, constitutes no part of the contract for the commissions; and it is not error to strike the allegation thereof from the complaint, thereby precluding the inclusion of the same in an amended complaint (MITCHELL, TOLMAN, and PEMBERTON, JJ., dissent).

Appeal from a judgment of the superior court for King county, Frater, J., entered February 5, 1923, dismissing an action on contract, upon sustaining a demurrer to the complaint. Affirmed.

[1]Reported in 227 Pac. 510.

*James E. Bradford,* for appellant.

*Tucker & Hyland, Ford Q. Elvidge,* and *Mary H. Alvord,* for respondent.

PARKER, J.—The plaintiff, Levold, commenced this action in the superior court for King county, seeking recovery upon an alleged commission contract, which he claims is a contract in writing, entered into by him with defendant, Pederson, in November, 1917. The cause comes to this court upon the appeal of Levold from a final judgment rendered against him by the superior court, after the sustaining of Pederson's demurrer to Levold's second amended complaint, upon the ground that the action has not been commenced within the time limited by law; Levold having failed to plead further. Our problem is as to whether or not the writing relied upon constitutes a contract in writing; it being conceded that, viewed as an oral contract, this action thereon is barred by our three-year statute of limitations; while viewed as an enforcible contract in writing, this action has been commenced within the six-year period, as prescribed by our statute of limitations relating to the commencement of actions upon contracts in writing.

The allegations of Levold's second amended complaint may be summarized as follows: Prior to November 5, 1917, Levold and Pederson had conversations looking to Levold securing for Pederson a shipbuilding contract from one Pichot, who is also referred to as the French Syndicate. They orally arrived at an understanding that Levold was to secure for Pederson a contract from the French Syndicate for the building by Pederson of eight wooden ships for a compensation of $305,000 each, Pederson to pay to Levold, as a commission for the securing of such contract, five per cent

of the total contract price. Levold stated to Pederson that he would not proceed with the negotiations until he had a promise from Pederson in writing that he would pay such commission, and also agree in writing to furnish a financial guarantee in the sum of $250,000 in the event the contract was secured. Pederson then wrote and caused to be delivered to Levold a letter as follows:

"Mr. J. C. Levold,        Seattle, Nov. 5th, 1917.

"Dear Sir: In regard to your statement that you will award me a contract to build eight vessels for the French Syndicate at a price of $305,000 each, less 5% com., will say that I can furnish a financial guarantee to do this work, providing I am assured that I will get the work in question upon showing you such a guarantee in the amount of $250,000. Yours truly,
(Signed) "Hans Pederson."

Levold then proceeded with negotiations for the securing of the shipbuilding contract from the French Syndicate. While such negotiations were proceeding, Pederson wrote and caused to be delivered to Levold a second letter as follows:

"Mr. J. C. Levold:       Seattle, Nov. 12 - 17.

"I hereby authorize you to state that I have secured my bond to guarantee that I will build the ships for the interests represented by Mr. Robert Pichot. Yours truly,       (Signed) Hans Pederson."

Thereafter, on February 27, 1918, as the result of the efforts of Levold, a formal contract was entered into between Pederson and the French Syndicate, by which Pederson agreed to build eight wooden vessels for the French Syndicate for an agreed compensation therefor of $305,000 each. Following allegations of facts, the substance of which are above summarized, Levold concluded his second amended complaint by alleging that there was due from Pederson to him the

sum of $122,000, being five per cent commission on the total shipbuilding construction price of $2,440,000, with interest from February 27, 1918, the date of the shipbuilding construction contract, claimed as the date of the accrual of Levold's cause of action against Pederson, and prayed for recovery accordingly.

Counsel for Levold have ingeniously drawn to his aid facts surrounding the making of this alleged contract and have presented what would be a persuasive argument in support of a contention that there was in fact a commission contract entered into between Levold and Pederson; but that falls far short of being our problem. The question here is, do the allegations of the second amended complaint show the making of a *contract in writing*? If not, then Levold's cause of action is barred by the three-year statute of limitations, however conclusively the allegations of the complaint may show the making of an oral contract between Levold and Pederson. Now we have no writing of any nature whatever made or signed by either Levold or Pederson other than the two letters of November 5th and 12th, 1917, which are above quoted in full. The first letter may be divided into two parts, connected with the words "will say that"; *first,* the statement by Pederson referring to a previous purported statement made by Levold, to wit:

"In regard to your statement that you will award me a contract to build eight vessels for the French Syndicate at a price of $305,000 each less 5% com.";

and *second,* a statement by Pederson with reference to the first statement in the letter, to wit:

"I can furnish a financial guarantee to do this work providing I am assured that I will get the work in question upon showing you such a guarantee in the amount of $250,000."

We look in vain in this letter for the making by its terms of any promise by Pederson to do anything. This letter might be some evidence to aid in showing an oral commission contract to have been made of the nature claimed by Levold, but does not constitute any such contract. It merely refers to a previous purported statement of Levold preliminary to saying to him, "I can furnish a financial guarantee, etc."

The second letter is equally devoid of any promise from Pederson to Levold to do anything. It merely informs Levold that Pederson has "secured my bond to guarantee that I will build the ships." This second letter has to do only with the prospective consummation of a construction contract between Pederson and the French Syndicate. Like the first letter, it might be some evidence to aid in showing an oral commission contract of the nature claimed by Levold, but it does not constitute any part of such a contract. In other words, it at most may be some evidence of what had been done by Pederson in pursuance of some previous contract entered into. It seems to us that, since these letters are wholly devoid of any promise on the part of Pederson to do anything, the most essential element of contract is absent therefrom, and that they do not therefore constitute a contract in writing.

It seems to us that the law, as announced by this court in *Cushing v. Monarch Timber Co.*, 75 Wash. 678, 135 Pac. 660, Ann. Cas. 1914C 1239, in harmony with our previous decisions, is conclusive as against the contentions here made in behalf of Levold that the contract sued upon by him is a contract in writing. In that case, there was involved an alleged contract of employment of an agent to sell real estate upon which he was seeking compensation by way of a commission. Such a contract, by § 5825, Rem. Comp. Stat. [P. C.

§ 7745], is required to be in writing to be enforcible, so the question was as to whether or not the alleged contract was a contract in writing. Holding that the contract sued upon was not one in writing, Judge Ellis, speaking for the court, made the following very pertinent observations:

"By an unbroken line of decisions we have held that, to meet this statute, the writing evidencing the agreement must be so complete in itself as to make a resort to parol evidence to establish any material element of the agreement unnecessary. The rule deduced from prior decisions and tersely expressed in *Engleson v. Port Crescent Shingle Co.,* 74 Wash. 424, 133 Pac. 1030, is that:

" 'A writing sufficient to satisfy the statute must be coextensive with the stipulations of the parties; that is to say, it must express the entire contract and leave nothing that pertains to the essentials of the contract to be supplied by parol.'

"The following decisions amply sustain that statement in all of its breadth. We cannot look beyond the writing itself to fix the liability. *Swartswood v. Naslin,* 57 Wash. 287, 106 Pac. 770; *Keith v. Smith,* 46 Wash. 131, 89 Pac. 473; *Foote v. Robbins,* 50 Wash. 277, 97 Pac. 103; *Forland v. Boyum,* 53 Wash. 421, 102 Pac. 34; *McCrea v. Ogden,* 54 Wash. 521, 103 Pac. 788; *Crouch v. Forbes,* 63 Wash. 564, 116 Pac. 14.

". . . the employment, the description of the real estate and the agreement to pay the commission are all essentials to any writing meeting the terms of the statute."

In that particular case, and in some of the others cited in the above quotation, the contract was held not to be in writing in all its essential particulars because not-describing the land which the agent claimed to have been authorized to sell. In some other of the cases cited in the above quoted language, the contract upon which the agent sought recovery of commission was

held not to be in writing because not containing any express promise to pay the claimed compensation or commission, though containing authorization to the agent to sell. Manifestly, a promise clearly obligating a contracting party is of the very essence of a contract, and when such promise is not expressed in the writing, plainly one of its most important essentials is wanting. This, as we view these two letters, is wherein they fall short of constituting a contract in writing.

Counsel for appellant rely principally upon the early decision of this court in *Strong v. Eldridge*, 8 Wash. 595, 36 Pac. 696, in which there was involved the question of whether or not a written signed subscription in these words, "I agree to subscribe $1,500 towards getting the foundry at Fairhaven," constituted a binding obligation. It was there held that the acceptance of such subscription and the expenditure of substantial sums in the construction of the contemplated foundry by those for whose benefit the subscription was given, resulted in making such subscription a binding obligation upon the signer of it. The question of whether or not this was a complete contract in writing seems not to have been considered. However, if the court assumed it to be such, it manifestly did so upon the theory that the subscription, by its very terms, constituted an express promise signed by the party to be bound. We think the decision in that case is not controlling here.

In Levold's original complaint filed in this action, he alleged the writing of a letter from Pichot to Pederson following the writing of the letter of November 5th from Pederson to Levold, reading as follows:

"Seattle, Wash., November 5, 1917.
"Mr. Hans Pederson,
　"Alaska Building, Seattle, Wash.
"Dear Sir: Confirming my letter of this day, I beg

to state that it is agreeable to me that you pay Mr. J. C. Levold five per cent of commission for his intervention in this contract of building the eight wooden schooners, this also being in conformity with your mutual agreement as per the letter from you to Mr. Levold which was communicated to me this morning. Yours very truly,                    (Signed) Robert Pichot."

The allegation of the writing of this letter was, upon motion of counsel for Pederson, stricken from the original complaint by the superior court. This is claimed by counsel for Levold to have been error; his theory evidently being that this letter was a part of the writing constituting the alleged commission contract sued upon. Levold was, by this ruling of the court, in effect prevented from setting up this letter in his second amended complaint in connection with the two letters from Pederson to him. We are of the opinion that the trial court did not err to the prejudice of Levold by striking this letter from the original complaint. It was not written or signed by either Levold or Pederson and could in no sense constitute any part of a written contract between them. Whether or not it would be admissible in evidence to aid Levold in proving an oral commission contract between him and Pederson is quite another question, but one with which we are not here concerned. This letter, in any event, has no bearing upon the question of whether or not the contract here sued upon is a contract in writing, which, in its last analysis, is the beginning and end of our inquiry.

We conclude that the pleadings in this case do not show, admitting every fact therein alleged to be true, that there has been entered into between Levold and Pederson any employment or commission *contract in*

*writing.* The rulings and judgment of the superior court are affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, MACKINTOSH, and FULLERTON, JJ., concur.

MITCHELL, J. (dissenting) — The second amended complaint, upon which this action was disposed of, alleges that, during the year 1917 and prior to November 5 of that year, the plaintiff entered into negotiations with the defendant to secure for him a contract to build the wooden vessels referred to.

"That the defendant then and there agreed to and with the plaintiff that, if the plaintiff secured the awarding of said contract to the defendant at a price of $305,000 for each vessel on the condition that the defendant would furnish suitable financial guarantees to build the vessels according to the plans and specifications to be furnished to him by said Pichot or his assigns, the defendant would pay to the plaintiff the full sum of five (5%) per cent of the full amount of said contract, as a commission to the plaintiff for securing said contract for the defendant. That in said negotiations said Pichot and his assigns were usually referred to as the French Syndicate. . . . That the plaintiff then and there stated to the defendant that he would not proceed with said negotiations *unless he had a promise in writing from the defendant that the defendant would pay him said commission of five per cent for his services* and unless the defendant would agree, in writing, to furnish a financial guarantee in the sum of at least $250,000 in the event that said contract was secured by the plaintiff for the defendant; that the defendant agreed thereto, and thereafter, in fulfillment of said agreement"

wrote and delivered the letters of November 5 and November 12, which are set out in the majority opinion. That the instrument of November 12 was used by appellant and exhibited to Robert Pichot in their negotiations, and that as a result of the services, work

and efforts of the plaintiff, as agent of the defendant, a written contract in duplicate was entered into on February 27, 1918, by and between the defendant and Robert Pichot, whereby respondent agreed to build eight wooden ships at $305,000 each and Robert Pichot agreed to pay him therefor. It was further alleged that the defendant had refused to pay the plaintiff his commission.

The contention of the respondent is that the second amended complaint states only an oral contract of employment which is barred by the statute of limitations. But we think it must be held that the action is on the written instruments and that a cause of action is stated. It is alleged that the appellant refused to render services unless a written promise was given, and that pursuant thereto the writing was signed and delivered. In this view of the situation, respondent argues that the writing relied on, if it may be termed ambiguous, is too much so to be enforced, but that the real objection is not so much that the contract is ambiguous but that it is too vague and incomplete to create any contract at all for a commission, and must yield to the parol evidence rule. On the contrary, the appellant contends that the contract is clear, else it is a case for the application of the maxim, *Id certum est quod certum reddi potest.* Both of these rules are well known in the law, and oftener than otherwise, if the writing in question is not perfect in all of its expressions and essentials, the difficulty lies in deciding which of the rules is applicable.

The lack of scholarly language in the letters from the respondent does not deprive them of being an enforcible contract. Both of them were dated, addressed to and delivered to the appellant upon being signed by the respondent. The one says that:

"In regard to your statement that you will award me a contract to build eight vessels for the French Syndicate at a price of $305,000 each less 5% commission, will say that I can furnish a financial guarantee, etc."

And the other, a few days later, says:

"I hereby authorize you to state that I have secured my bond to guarantee that I will build the ships for the interests represented by Mr. Robert Pichot."

Why write and deliver these letters at all to the one to whom they were addressed? Clearly the appellant was not to sign a contract with respondent for the building of the ships. Then what was he to do? Why did respondent authorize the appellant to state to the interests represented by Robert Pichot that he, the respondent, had secured a bond to guarantee the building of the ships, unless he was speaking to his agent who was engaged in the business of procuring a contract that was not to be had without the furnishing of such a bond? Why speak of a five per cent commission in the letter to appellant if appellant (his agent) was not to get the commission which was thereby promised him? The amount is reasonably certain, and why call it a commission? No one was interested in the subject-matter of the letters except the appellant, the respondent and the French Syndicate represented by Mr. Pichot. Somebody was to get five per cent commission, and surely it was not the syndicate represented by Mr. Pichot, else respondent would have written of a contract to build eight vessels for the syndicate at a price of $305,000 each less five per cent *discount*, rather than *commission*.

But if it be admitted that the letters do require elucidation, we think they fall within the maxim heretofore referred to and which has been applied in a great number of cases, of which *Strong v. Eldridge,*

8 Wash. 595, 36 Pac. 696, is typical. That was an action on an instrument as follows:

> "Sehome, Washington.............., 189...
> "I agree to subscribe $1,500 towards getting the foundry at Fairhaven.
> "E. Eldridge, for Eldridge and Bartlett."

After Strong and Warner, who were not mentioned in the writing, had performed what was alleged to have been the undertaking on their part, they sued the makers of the instrument. A demurrer to the complaint was sustained in the lower court, but the judgment was reversed on appeal. Against the writing, it was contended that it was not in any sense a subscription, but only an agreement to subscribe at some future time upon some condition or under circumstances satisfactory to the signers, and that it could not be enlarged or its terms varied or changed by averments or by oral testimony. It was held, however, to be a subscription and not an agreement to subscribe, because of the language of the instrument and of the rule:

> "And whether they did so agree must be ascertained from a fair and rational interpretation of the words actually used, when viewed in the light of surrounding facts and circumstances."

Continuing the decision on that same feature of the case, it was said:

> "While the words of a written instrument are usually to be understood in their ordinary popular sense, unless their meaning is defined by law, or has become peculiar by reason of usage as applied to some particular subject, yet in construing an instrument, if, from the subject or from the connection or object in view, it is apparent that the parties did not so employ them, or, according to their true definitions, they will receive the meaning thus shown to have been intended. *The rule is to so interpret the words as to carry into effect the intent of the parties as derivable from the*

*whole instrument and surroundings, whether they have employed language accurately or not.* Bishop, Contracts, § 404. See, also, *Atwood v. Cobb,* 16 Pick. 227 (26 Am. Dec. 658).

"Moreover, 'the true principle of sound ethics is to give the language of the promisor the sense in which he had reason to suppose it was understood by the promisee.' Benjamin, Principles of Contracts, 111, citing: *Hoffman v. Aetna Ins. Co.,* 32 N. Y. 405; *Carpenter v. Wells,* 65 Ill. 451, and other cases."

It was further contended in that case that there was no privity of contract, there being no payee named in the instrument. The opinion was to the contrary, the court saying:

"But when a contract arises by reason of an offer or proposal by one party which is accepted and acted upon by the other, the person to whom the offer or promise is actually made may be shown by extrinsic evidence. *Hopkins v. Upshur,* 20 Tex. 89 (70 Am. Dec. 376); *Swain v. Hill,* 30 Mo. App. 436; *Lathrop v. Knapp,* 27 Wis. 222."

While with respect to the claim that there was no expressed consideration to support the promise, it was said:

"The acceptance of the proposal of the respondents by the appellants, and their incurring liabilities upon the faith of it, created a complete contract upon a consideration moving from the promisee to the promisor. *Cottage Street Church v. Kendall,* 121 Mass. 530; *Carr v. National Security Bank,* 107 Mass. 45."

See, also, *Dyer v. Middle Kittitas Irr. Dist.,* 25 Wash. 80, 64 Pac. 1009; *Reed v. Insurance Co.,* 94 U. S. 23. The *Strong v. Eldridge* case, *supra,* has been frequently cited by this court, and in *Kanaskat Lumber & Shingle Co. v. Cascade Timber Co.,* 80 Wash. 561, 142 Pac. 15, the doctrine was admitted as elementary, although held not applicable to the facts in that case.

The rule stated in the case of *Kanaskat Lumber & Shingle Co. v. Cascade Timber Co., supra,* cited by the respondent, and the case of *Cushing v. Monarch Timber Co.,* 75 Wash. 678, 135 Pac. 660, Ann. Cas. 1914C 1239, relied on in the majority opinion, is not applicable or controlling here for the reason that those cases involved the statute of frauds relating to contracts of the employment of agents to sell real estate, which, according to the general rule, as stated in the latter one of those cases, is that,

"A writing sufficient to satisfy the statute must be coextensive with the stipulations of the parties; that is to say, it must express the entire contract and leave nothing that pertains to the essentials of the contract to be supplied by parol."

The contract mentioned in the present case is not controlled by any statute of frauds, but relates to the employment of an agent for the making of a contract for the building of ships; and if, as already stated, there be any indefiniteness about the written contract relied upon, it may be explained, under the allegations of the second amended complaint, according to the doctrine of the *Strong v. Eldridge* and other authorities hereinbefore referred to.

For these reasons, I dissent from the majority opinion, and think the judgment should be reversed.

TOLMAN and PEMBERTON, JJ., concur with MITCHELL, J.