[No. 11206. Department Two. July 23, 1913.]

JAMES ENGLESON, *Respondent*, v. PORT CRESCENT SHINGLE COMPANY, *Appellant*.[1]

FRAUDS, STATUTE OF — REAL ESTATE — BROKERS — COMMISSIONS. Standing timber is "real estate," within the statute of frauds, Rem. & Bal. Code, § 5289, requiring contracts for a broker's commission for the sale of real estate to be in writing.

SAME—WRITING—SUFFICIENCY. Under the statute of frauds requiring an agreement to pay a broker's commissions to be in writing, the writing is insufficient where it neither describes the property to be sold nor specifies the amount of the commissions to be paid.

SAME—CONTRACT FOR COMMISSIONS. A contract to procure persons who would buy standing timber, for which the party was to be paid for his trouble is, in its essence, a contract employing a broker to sell standing timber on commission, and within the statute of frauds.

Appeal from a judgment of the superior court for King county, Humphries, J., entered March 7, 1913, upon the ver-

[1]Reported in 133 Pac. 1030.

dict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*T. F. Trumbull* and *Farrell, Kane & Stratton,* for appellant.

*George B. Cole* and *Gay & Olson* (*Milo A. Root,* of counsel), for respondent.

FULLERTON, J.—In this action the respondent recovered against the appellant for services rendered in the sale of certain timber owned by the appellant; a part of such timber being upon lands owned by the appellant, and a part thereof on lands of third persons who had sold the timber on such lands to the appellant. The contract on which the recovery was had is set forth in the complaint in the following language:

"(2) That on or about the forepart of the month of January, 1912, defendants came to said Black Cat Employment Co. and orally informed said company that it, said defendant, had a large quantity of shingle timber for sale in Clallam county, Washington, and orally requested said Black Cat Employment Co. to procure and furnish said defendant a party or parties who would purchase said shingle timber, and then and there orally promised and agreed with said Black Cat Employment Co., that if said company would find, or procure, or furnish to defendant the name of a party who would purchase and contract for said shingle timber, that it, said defendant, would pay said Black Cat Employment Co. a reasonable sum or compensation for so furnishing said defendant said party.

"(3) That thereafter and during the forepart of the month of January, 1912, said Black Cat Employment Co. obtained and in writing furnished to defendant the names of several parties who were desirous of purchasing said shingle timber, and amongst said list of names was the Howell-Hill Mill Co., a Washington corporation.

"(4) That thereafter and on January 18th, 1912, said defendant, in writing, acknowledged the receipt of said list of names of parties so furnished defendant by said Black Cat Employment Co. and then and there wrote said Black Cat

Employment Co. that it had written said Howell-Hill Mill Co. as well as each of said parties so furnished by said Black Cat Employment Co., and requested said Black Cat Employment Co. to 'Keep on working on this,' and then and there agreed to pay said Black Cat Employment Co. for its trouble. (A copy of which said writing and said letter sent said Howell-Hill Mill Co., is hereto attached, marked Exhibit 'A' and 'B' respectively, and made a part and portion of this paragraph by reference, the same as though set out in *haec verba* and immediately following).

"(5)    That said Howell-Hill Mill Co. was ready, able, anxious and willing to enter into a contract and to purchase said shingle timber, and thereafter and on May 23d, 1912, by and through the efforts of said Black Cat Employment Co. as in this complaint set forth, said defendant did sell to said Howell-Hill Mill Co. and said Howell-Hill Mill Co. did purchase and contract to purchase and buy from said defendant, said shingle timber, the location of which said timber, and the price and terms, conditions thereof, and each and all thereof are more particularly set forth in Exhibit 'C' hereto attached and made a part and portion of this paragraph by reference, the same as though set out in *haec verba* and immediately following."

The writing referred to in the complaint as containing a promise to pay for the services rendered is in the form of a letter and reads as follows:

"Black Cat Emp. Office.        Port Crescent, Wash., 1-18-12.
    "Seattle, Wash.
Gentlemen: Enclosed is a copy of a letter we sent to Howell-Hill Mill Co.  Have also written each of the other parties you named for us.  Keep working on this and we will pay you for your trouble if we can close with any of them.  Do not expose those prices when not necessary.
                    "Very truly yours,
                        "Port Crescent Shingle Co.,
                            "By J. M. Joyce."

A demurrer was interposed to the complaint, on the ground that it failed to state facts sufficient to constitute a cause of action, the precise objection being that the contract sued upon was within the statute of frauds.  The demurrer was

overruled, whereupon the appellant answered, taking issue on all the material allegations of the complaint, and setting up certain affirmative defenses not necessary here to notice. On the issues made, a trial was entered upon before a jury, at which the evidence of the respondent tended to substantiate the allegations of his complaint, with the additional particular that the greater part of the timber was uncut timber standing and growing upon lands situated in Clallam county. At the conclusion of all the evidence, the appellant challenged its legal sufficiency to warrant a recovery against it, again contending that the contract sued upon, and shown to have been entered into by the evidence, was within the statute of frauds. The challenge was denied, and the cause was submitted to the jury under the following instructions:

"This, in short, is an action for commission . . . If you find that the plaintiff pursuant to such employment brought together the defendant and said Howell-Hill Mill Company, or that they were brought together at his instance, and pursuant to a suggestion of plaintiff to the defendant, or to said Howell-Hill Mill Company, and that the defendant and said Howell-Hill Mill Company entered into such an arrangement of purchase, or for the cutting of said timber, and that the defendant promised to pay the plaintiff for services in doing this thing, then I instruct you that the plaintiff is entitled to recover whatever would be the reasonable value of his services for so doing; and in determining what is the reasonable value of his services, you may take into consideration what the ordinary commission or compensation is that is customarily allowed for such services in this community. In fixing the value of the plaintiff's services, in case you find he did render the services, which he alleges with the results which he alleges, you are not to be bound solely by the length of time, or shortness of time, that he consumed in bringing the defendant together with the Howell-Hill Mill Company, but you may also take in consideration what the general custom is in brokerage business of this character, and if you find that it is the general custom to pay commission at a certain rate for this kind of service, and find that plaintiff rendered such services, then you are permitted to allow him compensation at the rate of commission testified to as being customary, and based upon

the reasonable market value of the timber at that time, as you find such reasonable market value to be shown by the fair preponderance of the evidence in the case."

The jury returned a verdict in favor of the respondent for the sum of $1,500 on which judgment was rendered as before stated.

The statute (Rem. & Bal. Code, §5289; P. C. 203 § 3), provides, that an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission, shall be void unless such agreement, or some note or memorandum thereof, be in writing and signed by the party to be charged. The principal question suggested by the record is, therefore, whether the contract on which the recovery was had falls within this statute. As shown by the quotation from the complaint, the appellant orally requested the respondent to procure and furnish a purchaser for its shingle timber situated in Clallam county, which timber was not severed from the realty, but was standing and growing thereon. Whether, therefore, the contract was valid or void must depend upon the answer to the question, was the timber a part of the realty upon which it was standing, or was it personal property.

That growing timber was regarded as pertaining to the real property upon which it stood, under the common law, there can be little if any doubt. Being the product of nature, and attached to and partially imbedded in the soil, it was considered by all of the older writers as a part of the inheritance, and not as emblements passing to the administrator on the death of the owner. That the rule is still the same in most of the American jurisdictions is shown by the cases collected in the note to *Ives v. Atlantic & N. C. R. Co.*, 9 Ann. Cas. 188. The rule, as announced by some of the state courts, is that a verbal sale of standing timber is a license authorizing the purchaser to enter and cut and remove timber until the license is revoked, but it is at the same time held that a contract for

the sale of standing and growing timber must be in writing before it can be specifically enforced against the vendor.

In *Seymour v. LaFurgey*, 47 Wash. 450, 92 Pac. 267, this court held that an action to rescind a contract for the removal of standing timber was local, and that a change of venue to the county of the defendant's residence was properly denied. And in *Thill v. Johnston*, 60 Wash. 393, 111 Pac. 225, it was held that an oral agreement purporting to abrogate a written contract for the sale of standing timber was void, the reason given being that the original agreement was one for the conveyance of real property, and hence required to be in writing and could not be abrogated by an executory parol agreement. These cases, while not directly in point, clearly indicate that the court believed that the rule of the common law on the question here involved prevailed in this state. This, we think now, is the better rule, and it follows that the contract sued upon falls within the statute above cited.

Was the agreement by which the respondent was employed to find a purchaser for the property in question in writing within the meaning of the statute? The claim that it is so is founded on the letter of January 18, 1912, which we have quoted. But it is manifest that this is insufficient for the purpose under the authority of the cases of *Keith v. Smith*, 46 Wash. 131, 89 Pac. 473; *Foote v. Robbins*, 50 Wash. 277, 97 Pac. 103; *Forland v. Boyum*, 53 Wash. 421, 102 Pac. 34; and *Crouch v. Forbes*, 63 Wash. 564, 116 Pac. 14. These cases lay down the rule that a writing sufficient to satisfy the statute must be coextensive with the stipulations of the parties; that is to say, it must express the entire contract and leave nothing that pertains to the essentials of the contract to be supplied by parol. The contract here in question neither describes the property to be sold, nor specifies the amount of commission or compensation that will be paid for the services, and under the rule as we have heretofore announced it is plainly insufficient.

We are aware that the respondent argues:

"In this case, respondent did not sue for services as an agent in selling standing timber, nor for selling anything. He was employed to find somebody who would enter into a milling proposition with appellant. It was not a proposition to sell some real estate; it was not a proposition, even, of selling the timber standing upon the land; but it was a proposition of getting some one who would enter into a deal with appellant for the building of a mill, the cutting, removing and payment for, of certain timber, part of which was standing and part of which was lying upon certain lands. Appellant desired some company to come upon those lands with a mill and with a logging outfit and convert the timber into lumber or shingles and pay therefor.

"Respondent was employed by appellant to secure someone who would do this, and who would enter into the necessary agreement and arrangement for bringing this about. The services of respondent were engaged by appellant for this purpose, and they resulted successfully for appellant. Through respondent's efforts and influence negotiations were opened up between appellant and the Howell-Hill Mill Company, which resulted in a contract whereby the latter company undertook to locate a mill, cut and remove certain timber and do various other things."

But this was not the cause of action stated in the complaint, nor was it the theory upon which the case was tried. The allegation of the complaint is that the appellant orally requested the respondent "to procure and furnish . . . a party or parties who would purchase said timber," and agreed in writing to pay the respondent for its trouble. The instructions of the court were founded on the same theory. He charged the jury directly that the basis of recovery was for commissions earned, and that the jury could allow the respondent "compensation at the rate of commission testified to as being customary." Moreover, the contract, as shown by the evidence, was in its essence a contract employing a broker to sell standing and growing timber on commission, and its nature cannot be changed by calling the services performed by another name.

The judgment is reversed and remanded with instructions to enter a judgment in favor of the defendant, the appellant in this court, to the effect that the respondent take nothing by his action.

MAIN, ELLIS, and MORRIS, JJ., concur.