[No. 10192.  Department One.  March 26, 1914.]

BARTHOLOMEW HEALY, *Respondent*, v. EVERETT & CHERRY VALLEY TRACTION COMPANY, *Appellant*.[1]

LOGS AND LOGGING—DEEDS — RESERVATION OF TIMBER — CONSTRUC-TION. A reservation in a deed of lands, of all the merchantable standing timber, together with the privilege of removing the same and right of way therefor, reciting that acceptance of the deed confirms "said privilege and! right of way, irrevocable until the removal of said timber," reserves the timber and right of removal "forever," and not merely for a reasonable time.

SAME. A deed reserving the standing timber and the "right of way where and along whatever route may be necessary to remove the same," the time for removal being unlimited, has reference to the condition of the land at the time of removal; and does not require the grantee to keep open the sloughs and bodies of water which at high water were a convenience for floating out the logs, if a reasonable right of way still exists and! is available.

NAVIGABLE WATERS — NAVIGABILITY — EVIDENCE — SUFFICIENCY. Sloughs which at times are filled by surface or flood waters from a river, are not "water courses" or "navigable" for timber products, so as to entitle the owner of timber to use them free of obstructions, especially across lands not owned by him.

TRESPASS—CUTTING TIMBER—DAMAGES. A railroad company is liable for the value of timber cut and used by it and its agents in the construction of its road.

Appeal from a judgment of the superior court for King county, Everett Smith, Esq., judge *pro tempore*, entered October 17, 1911, upon findings in favor of the plaintiff, in an action for an injunction and damages, tried to the court. Reversed.

*F. V. Brown* and *F. G. Dorety*, for appellant.

*C. R. Barney* and *James A. Haight*, for respondent.

CROW, C. J.—For some time prior to March 25, 1901, Bartholomew Healy, the plaintiff herein, was the owner of, and in the possession of, eighty acres of land, in the south-

[1]Reported in 139 Pac. 609.

east quarter of section thirty-one, in township twenty, north, of range seven, in King county. This tract was north of and near the Snoqualmie river, but another tract from six to ten hundred feet in width intervened between it and the river. Healy's eighty-acre tract consisted of a steep hillside towards the north on which was a considerable amount of timber. To the south, and towards the river, about one-third of the tract consisted of bottom land, which in times of high water, was overflowed by the river. A county road was located between the base of the hill and the lowlands. On March 25, 1901, the date above mentioned, Healy and wife, as parties of the first part, by their warranty deed, sold and conveyed the entire eighty-acre tract to Albert Knack and Agnes Knack, his wife, subject to the following exception, which we quote from the deed:

"The parties of the first part hereby reserving, however, from this sale, all the merchantable timber suitable for lumber, piles or shingles, now thereon, together with the right and privilege of going upon said land and cutting, manufacturing or removing the same therefrom and of the right of way where and along whatever route may be necessary to remove the same. The acceptance of this deed and having the same recorded, being an agreement to said reservations and a confirmation of said privilege and right of way, irrevocable until the removal of said timber."

The evidence before us indicates that the Knacks purchased and used the land for dairy purposes. On August 6, 1901, Alfred Knack and wife, by quitclaim deed, conveyed the eighty-acre tract to one Edward C. Mony, who purchased it for, and later conveyed it to, the defendant, Everett & Cherry Valley Traction Company, a corporation.

In the fall of 1909, the defendant corporation commenced making surveys with the intention of constructing its railroad across the land immediately south of the county road. Later, and after the commencement of plaintiff's actions herein, the railroad company constructed its road, the grade of its track for the most of the distance through the land

being practically on the same level as the grade of the county road. Plaintiff did not remove any of the timber which he had reserved in his deed at any time prior to the commencement of defendant's survey, although during the year 1907, prices were much higher, and the timber could have been handled more profitably than at any time before or since.

Two actions were commenced by plaintiff, which have been consolidated. The first was commenced on May 7, 1910, to enjoin defendant from building its railroad, and thus interfering with plaintiff's right to cut, remove, and transport his timber to the river. Plaintiff alleged that a slough was on the bottom land immediately south of the county road, which slough extended to a small lake on the southwesterly portion of the land, from which another slough extended across the adjoining land to the river on the south; that these sloughs, in times of high water, were navigable for timber products; that they could be utilized for transporting logs to the river, and that the defendant, by filling them and by constructing its road, was seriously interfering with plaintiff's logging facilities, right of way, and operations. In the first action, plaintiff's motion for a temporary restraining order was, upon hearing, denied, he having failed to allege that he then intended to cut and remove the timber. Later, and on June 15, 1910, he commenced another and independent action for an injunction; the only substantial difference in his second complaint being that he alleged he was then ready to move, and desired to move, the timber. The two actions were consolidated, but were not forced to trial by plaintiff until after the defendant had completed its railroad across the eighty-acre tract.

The trial judge in substance found, in addition to the facts above stated, that about two-thirds of the eighty-acre tract were located on a steep hillside, sloping from north to south to the county road, which crosses the tract from east to west; that the south one-third was bottom land, on the east and west sides of which were small ponds; that between

the ponds at the foot of the hill certain depressions or sloughs, more or less well defined, were located, with an outlet towards the southwest over the adjoining land to the Snoqualmie river; that, about 1897, much of the timber on the easterly and westerly sides of the land had been logged off, and removed into the river through the sloughs at the foot of the hill; that in 1909, after the defendant had purchased the land from the Knacks, it made surveys for the location and construction of its railroad; that, without plaintiff's consent, it removed and converted to its own use, merchantable timber from the eighty acres to the amount of 100,000 feet, board measure, of the reasonable value of $300; that plaintiff had notified defendant of his intention to cut the timber and remove it over and across the location selected by defendant for its railroad; that thereafter the defendant continued to construct the railroad, filling up and obstructing the depressions or sloughs, thereby obstructing the necessary, economical and available route for removing plaintiff's timber through the sloughs to the Snoqualmie river; that the remaining merchantable timber upon the land amounts to 1,100,000 feet, board measure; that its value has been impaired by the construction of defendant's track in the sum of $3,300; that plaintiff is entitled to a decree confirming his right and title to the timber, to the privileges and easements mentioned in the reservation of his deed, and to judgment for $3,600 for damages caused by defendant's acts; or that, in the event the damages be not paid, the plaintiff is entitled to a mandatory injunction requiring the defendant to remove that portion of its embankment and railroad that obstructs and fills the slough, or obstructs plaintiff's necessary and convenient route for removing the timber.

Upon these findings, a decree was entered whereby it was adjudged that defendant should, within twenty days, pay to plaintiff the sum of $3,600. It was further adjudged that, in the event of defendant's failure to make such payment, it

should within sixty days from the date of the decree, be required to remove so much of its railroad track, road bed, and construction work as prevents the plaintiff from using the slough for the removal of his timber. From this decree, the defendant has appealed.

Numerous assignments have been made and many interesting questions have been discussed. The record and briefs are voluminous; so much so that a concise statement of their contents cannot be made in an opinion of ordinary length. Appellant contends that the respondent's right to remove the timber expired long prior to the commencement of this action; that many years have elapsed since the date of the deed from Healy and wife to the Knacks; that the exception in the deed only reserved the right to remove the timber within a reasonable time; that such reasonable time has long since expired; that the title to the timber had reverted to the owner of the land; and that appellant's title thereto should be quieted in this action as against respondent, in accordance with the allegations and prayer of appellant's answer.

Respondent insists that he is entitled to remove the timber at any time in the future, when he may see fit to do so. The principal contention on this issue, seems to be predicated upon the proper construction or meaning of the word "irrevocable" in the clause above quoted. Appellant argues that the word "irrevocable" pertains only to the right of way, while respondent contends that it pertains to the reservation of the timber. On this proposition, we think the respondent's contention must be sustained. In *Skamania Boom Co. v. Youmans*, 64 Wash. 94, 116 Pac. 645, a similar question was presented. The deed there involved reserved to the grantor, his heirs and assigns, "all the timber on the above described premises, and the right to enter into and and upon the same for the purpose of removing said timber, and the construction and maintenance of a logging road thereon *forever.*" Construing this deed, we said:

"The appellants first contend that the word 'forever' in the reservation clause in the first deed refers only to the construction and maintenance of the logging road, and that the respondent had only a reasonable time in which to remove the timber; whilst the respondent insists that the word 'forever' has reference to both the right to remove the timber and to construct and maintain a logging road.  The appellants argue that the punctuation in the reservation clause compels a construction in their favor.  The original deed is not before us, but assuming that the certified copy carries the punctuation of the original deed, we do not think that the reservation clause is susceptible of the construction contended for by the appellants.  It is elementary that a deed, like any other written instrument, will be read as an entirety for the purpose of determining its true meaning. . . . The reservation of the right to construct and maintain a logging road was no doubt for the purpose of giving a practical value to the right to enter upon the land for the purpose of removing the timber.  The real value and essence of the reservation was the timber, with the right forever to remove it by means of a logging road."

The word "irrevocable" in the deed before us should be construed as the word "forever" was construed in the case cited.

The controlling question before us is the proper construction to be placed upon the clause of the Healy deed used in reference to the right of way reserved by respondent, reading as follows: "the right of way where and along whatever route may be necessary to remove the same."  A deed is to be construed so as to give force, effect, and meaning to every portion of the instrument, and carry out the real intention of the parties.  If a deed admits of more than one construction, it must be construed most strictly against the grantor, and most favorably to the grantee.  It is evident that Healy and wife conveyed something of value; that they intended to convey the land and its beneficial use to their grantees, subject only to the exception that title to the timber was to be reserved, with a reasonable and convenient right of way over which to remove it, and that the rights thus reserved were to continue in force until the timber should be actually removed.

It was certainly intended that the Knacks and their grantees should make some beneficial use of the land. Otherwise the execution of the deed was an idle act. If we were to hold that respondent would be entitled for all time to insist that the so-called sloughs should remain in their natural state without interference or change, until he may see fit to remove the timber, the effect of our holding would be to deprive his grantees and appellant of any practical use of the land. This could not have been intended. The evident intention of the parties was to reserve to respondent a right to remove the timber, having regard to the condition in which the land might be at the time of removal. The evidence shows that this can be done. Even though it be conceded that appellant's railroad may, to some extent, affect respondent's interests, a reasonable right of way will still exist and be available to him. This is all that he can demand under the exception clause of his deed. The trial court erred in so construing the exception of the deed as to hold that it requires the grantee or the appellant to preserve the land in its original condition for an indefinite time awaiting respondent's pleasure.

On consideration of all the evidence, we are constrained to hold that, in their natural state, the so-called sloughs with which it is alleged the appellant has interfered, are not navigable for timber products. There are no streams of water upon the land. The only water which at any time comes into the sloughs is surface water, which escapes from the banks of the river during freshets. In making the statement that there are no streams upon the land, we are not unmindful of casual references in the record to a small rivulet which appears to come down the hillside in rainy seasons. There is no evidence that water ever comes from this supposed stream into the sloughs in sufficient quantities to make them navigable for timber products. The evidence shows that another railroad company has constructed its track and right of way across the land which lies south of the tract here involved, and near the river, although there is a trestle upon its right

of way· through which respondent claims his logs could be transported. The evidence further shows that the Snoqualmie river, in times of high water, overflows its banks, and that the only waters ever found in the alleged sloughs are flood waters which come from the river at such times. Under the doctrine announced in *Harvey v. Northern Pac. R. Co.*, 63 Wash. 669, 116 Pac. 464, either of the two railroad companies would have the right to dyke against this surface water, for the protection of their lands. It cannot reasonably be claimed that the exception in respondent's deed would deprive appellant of the right to protect its land against surface water, which this court has held is an outlaw and common enemy. Certainly the other railroad located near the river on land which respondent never owned would have this right. Numerous photographic exhibits in the record show these alleged sloughs. These and other exhibits, and the preponderance of the oral evidence, show that, although the alleged sloughs are depressions in the surface of the earth, they are not water courses. They are covered with grass and other vegetation, indicating the absence of any well defined water course, and also indicating that they remain dry most of the year. Contour maps, which are also exhibits, indicate that no water could get into these alleged sloughs other than surface water. We therefore conclude, from all the evidence, that these alleged sloughs are not navigable for timber products to such an extent as to confer upon respondent the right to use them as a natural highway for transporting his logs, especially over the tract of land towards the south which he never owned, and in which he has no estate or interest.

The finding that 100,000 feet of respondent's timber of the value of $3 per thousand was removed by the appellant or its employees, is sustained by the evidence, although appellant insists that such removal was the act of an independent contractor. We conclude from the evidence that this timber was removed and used by appellant's agents in the construction of its road. This being true, the respondent is entitled to re-

cover its value, but he is not entitled to any other relief herein.

The judgment is reversed, and the cause is remanded with instructions to enter a judgment in favor of the respondent for $300, the value of timber removed by the appellant or its employees, with interest thereon from the date of the commencement of the second action. Appellant will recover its costs in this court. Respondent will recover his costs in the trial court.

MOUNT, CHADWICK, GOSE, and PARKER, JJ., concur.