[No. 11706.   Department Two.   April 28, 1914.]

E. L. FRANCE *et al.*, *Respondents*, v. DEEP RIVER LOGGING COMPANY, *Appellant.*[1]

FRAUDS, STATUTE OF—CONVEYANCE OF STANDING TIMBER. The sale of standing timber, with the right of entry and removal in the future, is within the statute of frauds, Rem. & Bal. Code, §§ 8745, 8746, requiring conveyances of real estate or any interest therein to be in writing.

LOGS AND LOGGING — CONVEYANCE OF TIMBER — SEVERANCE — CONVERSION INTO PERSONAL PROPERTY. The sale of standing timber with the right to enter upon the land and remove the timber at the pleasure of the grantee, and to have and hold the granted property and privileges forever, conveys a perpetual right to enter and remove the timber at any time; and does not sever the timber from the soil so as to convert it into personal property.

TAXATION—STANDING TIMBER—SEPARATE OWNERSHIP—ASSESSMENT. Where standing timber was held under separate ownership from the land, with the perpetual right of entry and removal, it remains real property, and the land and timber are properly assessable together as real estate, in the absence of any request to have them separately assessed.

TAXATION—FORECLOSURE—SUMMONS — SERVICE — PRESUMPTIONS— BURDEN OF PROOF. In a tax foreclosure, the sheriff's return that

[1]Reported in 140 Pac. 361.

defendant, a foreign corporation, could not be found within the county, and an affidavit in usual form to the effect that the defendant was a nonresident and could not be found in the state, is sufficient to support a judgment in foreclosure, and to put the burden of proof upon the defendant to show that it had officers within the state who could have been personally served.

SAME—PERSONAL SERVICE—EVIDENCE. The presumption in favor of the judgment in a tax foreclosure against a nonresident corporation, upon service by publication, is not overcome by evidence that personal service could have been made, to the effect that a manager of the company was it statutory agent and was frequently on the lands in question at the time, but was not there continuously.

TAXATION — TAX TITLE — TREASURER'S DEED — SIGNATURE. A tax title under a foreclosure regular in all respects, is not invalidated by the fact that the treasurer failed to sign the tax deed, which contained his name in the granting clause and was duly acknowledged by him.

MOUNT, J., dissents.

Appeal from a judgment of the superior court for Pacific county, Wright, J., entered July 12, 1913, upon findings in favor of the plaintiffs, in an action for trespass, tried to the court. Affirmed.

*Coovert & Mannix, Bond & Eddy*, and *Reed & Bell*, for appellant.

*Abel & Burnett* and *Welsh & Welsh*, for respondents.

PARKER, J.—The plaintiffs, claiming to be the owners of a tract of land in Pacific county, commenced this action in the superior court for that county, seeking recovery of damages from the defendant for cutting and removing timber therefrom. A trial before the court without a jury resulted in findings and judgment in favor of the plaintiffs for $9,000 damages, from which the defendant has appealed.

The real controversy is over the title to the timber upon the land. Appellant claims title to the timber through conveyance thereof from William J. Dyer, the original patentee of the land, while respondents claim title to both the land and the timber through a tax foreclosure and deed thereun-

der, issued to them by the treasurer of Pacific county some two years before the removal of the timber by appellant.

On November 16, 1892, William J. Dyer, by deed duly executed and acknowledged, conveyed the timber upon the land, with the right of entry and removal, to G. H. Mooers, the granting language of the conveyance being as follows:

"By these presents do grant, bargain, sell and convey unto said G. H. Mooers, his heirs, personal representatives and assigns, all timber and trees (inclusive of both standing trees and fallen trees) upon the south half of the southeast quarter and the south half of the southwest quarter of section 30 in township 11, north of range 8 west of the Willamette meridian, in Pacific county, state of Washington, and the right of entering upon said land and removing said timber and trees from the same at the pleasure of said grantee, his heirs, personal representatives and assigns and of doing all things necessary to log or remove said timber without unreasonable damage to said land. To have and to hold the said granted property and privileges to the said G. H. Mooers, his heirs, personal representatives and assigns forever."

On July 1, 1902, Mooers conveyed this same timber with the right of entry and removal to the Deep River Logging Company, appellant, using this same language in the granting portion of the conveyance. Both of these conveyances were duly recorded in the office of the auditor of Pacific county soon after their execution, as deeds to real property.

In July, 1907, respondents having become the owners of the lien charged against the land for general taxes in the years 1902 and subsequent years, evidenced by certificates of delinquency and tax receipts, commenced foreclosure of their lien in the superior court for Pacific county against William J. Dyer and Deep River Logging Company. Thereafter, such proceedings were had in that foreclosure action that judgment and order of sale of the land was rendered therein, sale of the land in pursuance thereof was made, at which the respondents became the purchaser thereof, and a tax deed was accordingly issued to respondents by the treas-

urer of Pacific county on December 19, 1907. The land and the timber thereon had not been assessed or taxed separately at any time prior to the time of respondents' tax foreclosure, the whole being assessed together as real property. Appellant never requested that the timber upon the land be assessed separately from the land, nor did appellant ever make any return of the timber upon the land as personal property to the assessor of Pacific county, nor did appellant ever pay any taxes thereon in any form; though it did make return of and pay taxes upon personal property owned by it in Pacific county. During the months of July, 1910, to April, 1911, inclusive, appellant went upon the land, cut and removed therefrom standing timber to the value of $9,000, for which damages in that sum were awarded to respondents by the judgment in this action, as we have stated. Other facts will be noticed as may become necessary in connection with our discussion of appellant's several contentions.

Counsel for appellant first contended that respondents' tax deed did not convey to them the title to the timber upon the land, because the timber was constructively severed from the land and became personal property by the conveyance of Dyer to Mooers in 1892. Prior to the act of 1907, Rem. & Bal. Code, § 9095 (P. C. 501 § 23), which became the law long after the assessment and levy of the taxes upon which respondents' foreclosure and deed rests, we had no statute law touching the question of standing timber being real or personal property for purposes of assessment and taxation when separately owned. It is elementary law that standing timber is real property—as much so as the land on which it stands—when the title to both the timber and the land is vested in one ownership. It may now be regarded as the settled law of this state, in harmony with the decided weight of authority elsewhere, that conveyance of standing timber, with the right of entry upon the land and removal of the timber therefrom in the future, whether the time of removal be measured by stated or reasonable time, is within our statute requir-

ing conveyances of real estate or any interest therein to be by deed. Rem. & Bal. Code, §§ 8745, 8746 (P. C. 143 §§ 1, 3); *Seymour v. La Furgey*, 47 Wash. 450, 92 Pac. 267; *Thill v. Johnston*, 60 Wash. 393, 111 Pac. 225; *Engleson v. Port Crescent Shingle Co.*, 74 Wash. 424, 133 Pac. 1030; 20 Cyc. 212; *Ives v. Atlantic & N. C. R. Co.*, 142 N. C. 131, 55 S. E. 74, 115 Am. St. 732. (See note to this case in 9 Am. & Eng. Ann. Cases, 192.)

It is plain, therefore, that the timber here involved was, in any event, real property until conveyed by Dyer to Mooers in 1892, and that its conversion into personal property depends entirely upon the effect of that conveyance. Manifestly, the timber did not become personal property unless it became such by virtue of that conveyance. The conveyance by Mooers to appellant thereafter had no effect upon this question.

There have been two decisions rendered by this court which may seem to have some bearing upon this question. In *Brodack v. Morsbach*, 38 Wash. 72, 80 Pac. 275, there was under consideration a duly executed and acknowledged written contract for the sale of standing timber. Some contention was there apparently made that the contract did not in form amount to a conveyance, but it having recited full payment of the consideration, it was held by the court to be in effect a conveyance of the timber carrying an implied license to remove it from the land. A subsequent purchaser of the land had actual notice of the conveyance of the timber and was held not to have acquired the timber with the land, this being the main question involved. In a *per curiam* opinion so holding, this court, among other things, said:

"Conceding that the sale of the growing timber was a sale of an interest in the land, upon the execution and delivery of the contract of sale, the timber became personal property, and the only interest the defendants had, or could claim, in the land upon which the timber stood was an implied license to enter and remove the timber." *Brodack v. Morsbach, supra.*

The court expressly refrained from determining the question of time limitation against the removal of the timber, as not being involved in the case. A review of that case, we think, renders it plain that the court's decision would have been the same regardless of whether or not the timber became personal property by the conveyance there involved, and that that question was wholly unnecessary to be decided in disposing of the case as the court did.

In the recent case of *Engleson v. Port Crescent Shingle Co.*, 74 Wash. 424, 133 Pac. 1030, we had under consideration a situation leading to a decision in substance somewhat inconsistent with the remarks of the court above quoted from the *Brodack* case. The action was to recover compensation for services rendered in effecting a sale of standing timber. Recovery was denied by this court on the ground that there was no contract for such service evidenced in writing, as required by Rem. & Bal. Code, § 5289 (P. C. 203 § 3), rendering void, if not evidenced in writing, "any agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission." The standing timber involved in that case was, in part, upon lands owned by appellant and, in part, upon lands owned by third persons who had sold the timber thereon to appellant, appellant being the defendant in the action, from whom commission upon the sale of the timber was sought to be recovered. The decision in that case was, in effect, a holding that no part of the commission could be recovered, notwithstanding a portion of the timber sold by the plaintiff claiming commission was owned by the defendant separate from the ownership of the land by another. It would seem that, if appellant's contention in the case before us be well grounded, the plaintiff in the *Engleson* case, would have been entitled to recover upon the oral contract, so far as he was entitled to commission for the sale of the portion of the defendant's timber owned by him separate from the land. The question, however, does not seem to have been presented for consideration in that

case, yet the question comes as near being in the case as it was in the *Brodack* case. We conclude that neither of these decisions should be regarded as controlling authority upon this question. This leaves us without any controlling authority upon the question so far as our own decisions are concerned.

A number of decisions of the courts are brought to our notice, holding that standing timber, when sold by the owner of the land, with the right of entry and removal, ceases to be real property and becomes personal property. The decisions so holding, rendered since 1850, to which our attention has been called, upon examination, will be found to involve sales of timber with the right of entry and removal for a fixed, limited period, or cases where such right of entry is subject to be revoked upon notice by the landowner. In *Kingsley v. Holbrook*, 45 N. H. 313, 86 Am. Dec. 173, the right of entry and removal was limited to three years. In *Fairbanks v. Stowe*, 83 Vt. 155, 74 Atl. 1006, 138 Am. St. 1074, the right of entry and removal was limited to five years. In *Montgomery v. Peach River Co.*, 54 Tex. Civ. App. 143, 117 S. W. 1061, the right of entry and removal was limited to approximately seven years; besides, the land was school land and in no event taxable, while the timber was owned by a private person and was held to be taxable as personal property of such person. In *Barber v. Rodgers*, 71 Pa. St. 362, the right of entry and removal was subject to be revoked upon thirty days' notice. At pages 366, 367, the court observes:

"If the agreement does not contemplate the immediate severance of the timber it is a contract for the sale or reservation of an interest in land, and until actual severance the timber in such case passes to the heir, and not to the personal representative. But when the agreement is made with a view to the immediate severance of the timber from the soil, it is regarded as personal property, and passes to the executor and administrator, and not to the heir . . . If the reservation had been made of a perpetual right to enter on

the land and cut all the pine and hemlock timber growing thereon, or of a right to cut and take it off at discretion as to time, then it would be within the rule laid down in *Yeakle v. Jacob*, 9 Casey, 376, and *Pattison's Appeal* [61 Pa. St. 294], and be regarded as an interest in land, which would pass to the heir and not to the administrator on the vendor's death."

This is a recognition of a distinction between the effect of an agreed immediate removal or upon notice, and an agreement to preserve the right of entry and removal for an unlimited time. Our attention is also called to *Warren v. Leland*, 2 Barb. 613, decided in 1847. That decision, however, and the numerous earlier decisions there reviewed, we regard as of little practical aid to the solution of the question here involved. They furnish but little light touching the nature of such a continuing right of entry upon land and removal of the timber therefrom as is here involved.

Now, assuming, but not deciding, that a conveyance of standing timber, with the right to enter upon the land and remove it within a stated or reasonable time, such as would be held to mean presently, that is, within such time as would enable the grantee, under ordinary circumstances, to conveniently remove it, having in mind its quantity, and the size of the task of its removal, would have the effect of converting the timber and the right of entry for its removal into personal property, did the grant of this timber, together with the right of entry and removal thereof, made by Dyer to Mooers in 1892, convert the same into personal property? Recurring to the language of that conveyance, it will be noticed that it gave to Dyer and his assigns "the right of entering upon said land and removing said timber and trees from the same at the *pleasure* of said grantee, his heirs, personal representatives and assigns . . . to have and to hold the said granted *property and privileges* to the said G. H. Mooers, his heirs, personal representatives, and assigns *forever*." We italicize the words we regard as controlling here. This language points, we think, conclusively to an intention on the

part of the grantor to convey a continuing, perpetual right for all time, to enter upon the land and remove the timber. The grantee's assigns or descendants may do so a hundred years hence. Grants in substance the same as this were held by us to have such effect in *Skamania Boom Co. v. Youmans*, 64 Wash. 94, 116 Pac. 645, and *Healy v. Everett & Cherry Valley Traction Co.*, 78 Wash. 628, 139 Pac. 609. No decision has come to our notice, rendered by any court in this country within the past seventy years, holding that such a grant of standing timber, with right of entry upon the land, converted the property right thereby created into personal property, nor are there any early decisions which we regard as controlling authority here to that effect. Not only is this the meaning of the language of the conveyance; but the acts of all parties concerned point with equal certainty, by their acts and admissions, to this construction by them of the language of the grant; as evidenced by the fact that more than seventeen years elapsed from the making of the grant, when it is claimed that the property was converted into personal property, until it was removed by the grantee's successor, this appellant; that appellant has never returned or listed the timber as personal property; that appellant has never paid any taxes upon the timber in any form, and that appellant has never requested the taxing officers of Pacific county to assess the timber separate from the land. Even if we regarded the question as doubtful, we would resolve such doubt in favor of the view that the timber, for the purpose of taxation, has been, at all times, real property, since, viewed in its physical aspect alone, it is real property and will be presumed to be such until clearly shown to be otherwise.

. If this property right acquired by Mooers and his grantee, appellant, became personal property by Dyer's conveyance, manifestly, it then ceased to be an interest in real estate, and could thereafter be conveyed otherwise than by deed; interest in real estate being required to be so conveyed by Rem. & Bal. Code, §§ 8745, 8746 (P. C. 143 §§ 1, 3), leases for less

than one year being the only exception, Rem. & Bal. Code, § 8802 (P. C. 295 § 1). Is it possible that this property right; to wit, title to the timber with the right of entry and removal, *"to have and to hold the said granted property and privileges . . . forever,"* ceased to be real property by the conveyance of Dyer, containing this language? It is not conceivable to us that this question can be logically answered in the affirmative. The right to the timber was so connected with the continuing right to enter upon the land as to not be severable one from the other, except by the actual physical removal of the timber, thereby putting an end to the right of entry. It may be suggested that possibly the logical classifications of conveyance of standing timber, for the purpose of determining whether the interest so conveyed thereby becomes personal or remains real property, would be to regard the interest conveyed as real property in all cases where the right of entry upon the land is to continue for more than one year. We leave this for future consideration, however, and desire not to be understood as expressing an opinion thereon at this time. We give no consideration to the effect of the law of 1907. We conclude that the land and timber here involved were properly assessable together as real property, and that the tax foreclosure, if regular as against Dyer and appellant, vested title in respondents to both the land and timber at least two years before the removal of the timber by appellant.

It is next contended that the tax foreclosure upon which respondent's tax deed rests was of no force or validity as against appellant, because appellant was not personally served with summons therein. Appellant is an Oregon corporation. William J. Dyer, the owner of the land at the time of the tax foreclosure, was then also a resident of Oregon. Service was had in the tax foreclosure action by publication. No contention is made against the sufficiency of that publication or the *prima facie* showing then made upon which it rests; the contention being only that appellant then had officers

within this state, enabling these respondents, plaintiffs in the tax foreclosure proceeding, to cause it to be served personally. A sheriff's return in the tax foreclosure proceeding, showing that appellant could not be found within Pacific county, was made; also affidavit in usual form to the effect that appellant was not a resident of this state and could not be found therein for service of process upon it. Manifestly, this is sufficient to support the judgment in the tax foreclosure and put the burden of proof upon appellant to show that it had officers within this state who could have been personally served with summons in the foreclosure action. The only information we have upon that subject is furnished by the testimony of one Olson, manager of appellant's business, whose residence was in Portland, Oregon, and upon whom they claim service should have been made in the tax foreclosure action, as follows:

"During the years 1906, 1907 and 1908 I was actually on the land down there near the Nasel river. I was not there continuously. It might have been a month or two between each time I was over there. I was manager of the company. It was my duty to do the operating and get the logs out of there. I was the statutory agent of the corporation here in 1906 and 1907. We were shut down part of the time, but never closed down the entire plant for any period to exceed from two to four weeks. I go down at least every two weeks. This was true in 1907."

We are of the opinion that this is not sufficient to overcome the presumption of the court having acquired jurisdiction in the tax foreclosure action as evidenced by the proceedings and recitals of the judgment rendered therein. *Ballard v. Way*, 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Nolan v. Arnot*, 36 Wash. 101, 78 Pac. 463.

Contention is made against the sufficiency of the treasurer's deed, issued to respondents upon their becoming purchasers at the tax sale held under the foreclosure, in that, as proven upon the trial, the treasurer's signature was not subscribed at the foot of the deed. The original deed of the treasurer

had become lost, and it therefore became necessary to prove
the same by a certified copy from the records of the county
auditor, where it had been recorded.   This certified copy
fails to show the signature of the treasurer.   It is in the
usual statutory form, reciting the sale to respondents and
that it was made "between J. E. Stout, as treasurer of Pacific
county, state of Washington, party of the first part, and
E. L. France, L. L. Wakefield, and E. S. Avey, parties of
the second part;" and "that I, J. E. Stout, county treasurer
of Pacific county  .  .  .   do hereby grant and convey unto
E. L. France, L. L. Wakefield, and E. S. Avey, and to their
heirs and assigns forever, the said real estate hereinbefore de-
scribed. .......... . County Treasurer."   Execution of the
deed was duly acknowledged by the county treasurer, as evi-
denced by certificate under official seal, endorsed thereon in
usual form, by an officer authorized to take acknowledgments.
In view of the fact that this deed is but the culmination of the
tax foreclosure upon which it rests, that such foreclosure ap-
pears in all respects regular, that the treasurer asknowledged
its execution before an officer authorized to take acknowledg-
ments, that his name appears in the granting clause as the
grantor, and the fact that the execution of the deed was
nothing more than a ministerial act which respondents were
entitled to have the treasurer perform, we are of the opinion
that the respondents' tax title should not be held void because
of the absence of the subscription of the treasurer's name at
the foot of the deed.   The following lend support to this
view:  *Tingley v. Bellingham Bay Boom Co.*, 5 Wash. 644,
32 Pac. 737, 33 Pac. 1055; *Eureka Sandstone Co. v. Long*,
11 Wash. 161, 39 Pac. 446; *Anderson v. Wallace Lumber
Co.*, 30 Wash. 147, 70 Pac. 247; *American Sav. Bank &
Trust Co. v. Helgesen*, 64 Wash. 54, 116 Pac. 837.   The
last cited decision, however, was overruled on rehearing in
67 Wash. 572, 122 Pac. 26, Ann. Cas. 1913 A. 390, upon the
particular facts of that case.

Respondents have also rested their title to the land and the timber thereon upon the three-year statute of limitations against actions to set aside tax deeds, Rem. & Bal. Code, § 162 (P. C. 81 § 65), which they claim has run in their favor. In view of the fact that appellant must have been in possession of the land some considerable portion of the three years following the execution of the tax deed, there may be reasons for regarding the statute as avoided by such possession, under our decision in *Buty v. Goldfinch,* 74 Wash. 532, 133 Pac. 1057, 46 L. R. A. (N. S.) 1065, where we considered this statute of limitations in the light of the original owner being in possession. We prefer to express no opinion upon the rights of respondents in so far as they are sought to be rested upon the three-year statute of limitations, and it is unnecessary for us to do so here.

The judgment is affirmed.

CROW, C. J., FULLERTON, and MORRIS, JJ., concur.

MOUNT, J. (dissenting)—I dissent. It seems clear to me that the deed from Dyer to Mooers in 1892 severed the timber from the land, so that thereafter the timber and the land for all purposes became separate properties, one personal and the other realty, in different owners. The case of *Brodack v. Morsbach, supra,* so holds and the cases *Skamania Boom Co v. Youmans* and *Healy v. Everett & Cherry Valley Traction Co., supra,* hold to the same effect.

Taxes thereafter levied upon the land did not affect the timber and a sale of the land for taxes did not carry the timber. The ownership of the timber is still in the appellant. The judgment is therefore wrong and should be reversed.