## GAUNT v. VANCE LUMBER CO.

Circuit Court of Appeals, Ninth Circuit.
March 18, 1929.

Rehearing Denied April 22, 1929.

No. 5636.

B. S. Grosscup, W. C. Morrow, and Chas. A. Wallace, all of Seattle, Wash., for appellant.

W. H. Abel, of Montesano, Wash., and Poe, Falknor, Falknor & Emory, of Seattle, Wash., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

DIETRICH, Circuit Judge. Appellant is executrix of the estate of R. M. Gaunt (hereinafter referred to as the broker), who brought this suit for the purpose of obtaining a decree for the reformation of a written contract between her, the decedent, and the appellee, Vance Lumber Company (hereinafter referred to as the company), and for the enforcement of the reformed contract by the entry of a money judgment.

It appears that in 1923 the company was the owner of large tracts of timber land, cut-over land, a sawmill, a planing mill, shingle mills, a logging railroad, a store, hotel, and numerous cottages for its employees, and complete equipment for logging and lumbering, all near Malone, in the state of Washington. Owing in part to the frail health of the head of the concern, it was decided to sell at least the major portion of the property, if a satisfactory purchaser could be found. Prior to the execution of the writing in question there had been some discussion of this desire, between officers of the company and the broker, who represented that she had a prospective purchaser, but it was of an indefinite, inconclusive character, and not highly material here. The writing which the court is asked to reform consists of a letter written on July 5, 1923, by the company, through its secretary, from its office in Malone to the broker at Tacoma, together with a plat referred to therein and inclosed therewith. The letter is as follows:

"Dear Madam: Referring to our former correspondence regarding a description and price of our holdings we beg to submit the following:

"The property consists of sawmill with a capacity of 140,000 feet per eight-hour day, blacksmith and machine shops. Planing mill with necessary dry kilns and dry lumber sheds. Two shingle mills with dry kilns. We have just recently completed the installation of a 1,000 K. W. General Electric Company turbine with necessary motors for supplying power for the above properties. Office and store buildings with stock of merchandise, hotel with accommodations for 100 people, 65 cottages for the accommodation of employees

with families, pool hall and picture show house.

"The logging equipment consists of one 100-ton Baldwin rod engine (new), two Heisler geared locomotives, 17 Donkey engines, with necessary lines, blocks, etc., 2 steam shovels, 11 flat cars, 1 steel moving car, 3 oil tank cars, 42 connected logging trucks, 6 ballast cars, camp cars for two camp units, and about 14 miles of standard gauge railroad. Standing timber that will cut 400 million, about 75 to 80 per cent. fir, balance hemlock, spruce and cedar. There is also about 500 million feet of standing timber available, but not owned by the company.

"We are holding this property for $3,-250,000.00 with commission to you of 2% and will sell on terms of one-third cash and $7.50 per thousand feet for all timber cut from our lands and $2.50 per thousand feet for all timber cut from other lands, with a minimum payment of $500,000.00 per year, interest on deferred payments at 5%.

"We are inclosing herewith plat showing our holdings, together with holdings of other companies in this vicinity. Trusting that this will supply you with the desired information, we are,

"Yours very truly,
"Vance Lumber Company,
"By H. B. Dollar."

Upon the plat, which was a common form, delineating sections, townships, and ranges, were exhibited in colors the timber lands of the company, and adjacent timber lands belonging to other companies, with appropriate marginal legend explanatory thereof; also lines locating in a general way the logging railroad and its connection with the Northern Pacific at the town of Malone. Upon no one of the tracts so exhibited as belonging to the company were located any of its structures referred to in the letter, or any unit of the lumbering plant, but, as we understand from an ambiguous record, as explained in appellee's brief, there was with the plat an unsigned writing, dated July 5, on what was apparently a letterhead of the company, in which was set forth the same general descriptive matter as that of the letter, followed by a particular description of the tracts shown on the plat in color, and ending with this language:

"Also: Lands in sections 10, 16, 17, Township 17 North, Range 5 West, where the mill, office buildings, hotel, cottages and other buildings in the town of Malone, Washington, are situated. All the above property situated in Grays Harbor and Thurston counties, state of Washington."

Neither upon the plat nor in this writing was there any description of the cut-over lands, and there is no contention that the company owned all, or even the major portion, of sections 10, 16, 17, in township 17.

On August 15, 1923, the company wrote to the broker: "As we are giving an option upon the property that we offered for sale, please do not do anything further with this until you hear from us again." It turns out that the option thus referred to was given to the Mason County Logging Company, and that pursuant thereto, on January 9, 1924, Vance Lumber Company and the Mason County Logging Company entered into a binding contract under the terms of which the former agreed to sell and the latter agreed to buy for a sum named all the holdings of the former, including not only the timber lands shown on the plat, but all the structures referred to in the letter of July 5, and certain lands in sections 10, 16, and 17 of township 17 north, range 5 west, described by metes and bounds, but also the cut-over lands of the company, aggregating between 1,000 and 2,000 acres. Thereafter, on May 2, 1925, the broker, contending that she had procured this purchaser for the company pursuant to the terms of the letter of July 5, 1923, brought a suit in one of the superior courts of Washington for the recovery of the amount of her commission, computed upon the sale price at the rate provided in the letter. At the trial, after a jury was impaneled, the court held in that case that the alleged contract was insufficient and void under the statutes of Washington, and thereafter, upon motion of the company, granted a nonsuit. It is to be inferred that this action was taken by the state court because of the defective description, or want of description, of the lands owned by the company upon which its structures and plant were located, and of its cut-over lands; and inasmuch as appellant impliedly concedes the correctness of that ruling, and the nonenforceability of the contract without reformation, it is needless for us to discuss that branch of the case, it being sufficient to say that the ruling rests upon a provision of section 5825 of Remington's Compiled Statutes of Washington, declaring that "an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission" "shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized."

For cases in which the Supreme Court of the state has directly or indirectly construed the provision, see Thompson v. English, 76 Wash. 23, 135 P. 664; Cushing v. Monarch Timber Co., 75 Wash. 678, 135 P. 660, Ann. Cas. 1914C, 1239; Rogers v. Lippy, 99 Wash. 312, 169 P. 858, L. R. A. 1918C, 583; Big Four Land Co. v. Daracunas, 111 Wash. 224, 190 P. 229; Goodrich v. Rogers, 75 Wash. 212, 134 P. 947; Baylor v. Tolliver, 81 Wash. 257, 142 P. 678; White v. Panama Lumber Co., 129 Wash. 189, 224 P. 563; Nance v. Valentine, 99 Wash. 323, 169 P. 862; Engleson v. Port Crescent Shingle Co., 74 Wash. 424, 133 P. 1030; Black v. Milliken, 143 Wash. 204, 255 P. 101; Farley v. Fair, 144 Wash. 101, 256 P. 1031; Campbell v. Weston, 87 Wash. 73, 151 P. 103; Coleman v. St. Paul, 110 Wash. 259, 188 P. 532. By the statute, so construed, admittedly we are bound.

In her complaint herein the broker alleged that it was the intention of the company to employ her to sell all of its property described in the contract with the Mason County Logging Company, and that it was understood and agreed that such would be the scope of the contract, but that in entering into the agreement, as evidenced by the letter of July 5th, through mutual mistake and inadvertence of both parties, "or the mistake and inadvertence of the complainant and the fraud of the defendant," the description was left inadequate and incomplete, and that therefore "the complainant cannot enforce said contract of employment and recover the full amount of her commission now due and owing her in an action at law."

The broker died prior to the trial, and little evidence was offered by the plaintiff. Indeed, the testimony adduced adds little, if anything, to what is expressed in the letter of July 5th and the inclosures, or to what may be fairly inferred therefrom, and after hearing it the court below held that the showing did not warrant reformation. Said the court: "The most that can be said, the letter, with the plat, is the conclusion of the minds of the parties, and basis on which the minds met, if they did meet. There was no mutual mistake. If the minds of the parties did not meet upon the letter and the map, there was no meeting of the minds. From the bill of complaint, the minds of the parties never met as to the identity of the property to be sold."

With this view we are in accord. Not only is there an absence of reference in the writing to the cut-over lands, but the evidence leaves no room for doubt that such lands were intentionally excluded from the coverage of the so-called contract, and the omission of their description was a result of neither mutual mistake nor fraud. The mills and cottages and other structures were doubtless intended by both parties to be within the terms of the contract, but the failure of the writing to measure up to the requirements of the state statute of frauds in point of description was not due to fraud. It is to be inferred that both parties in good faith believed it to be sufficient, and the mistake was a mistake in judgment as to its legal sufficiency. But if it be conceded that, in exceptional cases, a mistaken view of the law may afford a basis for reformation, this cannot be held to be such a case without in effect rendering the statute of frauds nugatory.

In all cases of attempted agreements in writing, presumably both parties intended to enter into a valid, binding contract, and if such intention is the only requisite basis to warrant the reception of oral testimony touching the nature and scope and terms of the intended agreement, "reformation" would be possible in any case. Parties might in good faith believe that a written memorandum given by one to the other is sufficient in law, even though unsigned by either, and they both might fully intend that such a memorandum should constitute a binding agreement; but, in such a case, for a court of equity to require a party to attach his signature would operate to abrogate the statute.

In case of performance by the plaintiff, reformation has sometimes been decreed where apparently the relief would have been denied, had the agreement been wholly executory. But, assuming such a consideration to have validity, it is not here presented. There is no element of estoppel. Plaintiff offered no evidence of performance by the broker, and in so far as the record discloses she not only had nothing to do with the sale to the logging company, but all she did looking to a sale to any one was trivial. Indeed, the record does not show that she ever answered the letter of July 5th, or bound herself to any obligation. True, with the approbation of the court, plaintiff refrained from adducing evidence touching performance as a basis for recovery of a money judgment, in the event the preliminary relief of reformation was granted; but the question of reformation was being tried, and plaintiff was therefore bound to adduce such evidence as she relied upon for the determination of that issue.

Affirmed.